S02A1067. CROSS v. STOKES et al.

(572 SE2d 538)

BENHAM, Justice.

George Guess Robertson, a veteran of World War II and the recipient of benefits from the United States Department of Veterans Affairs ("DVA"), executed a will in 1999 and died a few months later. In his will, Mr. Robertson left one-half of his estate to his cousin, appellee Zetta Stokes, and the other half to appellant John P. Cross, an attorney who had served Robertson's family for over 25 years and who was serving as Robertson's guardian when Robertson executed his will.[1] When the will was presented for probate by the executor, the probate court, citing "somewhat unusual" circumstances, appointed a guardian ad litem for possible unknown heirs. The guardian ad litem filed a caveat suggesting the will was the product of lack of testamentary capacity and undue influence, but withdrew the caveat four months later.[2] In his withdrawal pleading, the guardian ad litem questioned whether OCGA § 29-6-11 (c) disqualified appellant Cross from taking any bequest pursuant to the will of his DVA ward.[3] In November 2000, the probate court issued an order in

---

[1] In 1952, the Veterans Administration issued a certificate of incompetency regarding Mr. Robertson and required the appointment of a guardian of property as a condition precedent to the VA's payment of any benefits to Mr. Robertson. See OCGA § 29-6-3. Mr. Robertson's father served as guardian until his death in 1969, at which time Mr. Robertson's mother was named guardian of her son's property. After she died in 1994, the probate court, on the petition of Mr. Robertson's minister, appointed appellant John Cross as Mr. Robertson's guardian.

[2] "An adult [war] veteran . . . for whom a guardian has been appointed under the provisions of [OCGA §§ 29-6-2, 29-6-3 for the receipt of VA benefits] . . . is, where not shown to be non compos mentis, prima facie competent personally to exercise his full legal rights, in and out of court, with respect to all matters not affecting such benefits." *Morse v. Caldwell*, 55 Ga. App. 804, hn. 1 (191 SE 479) (1937). See also *Anderson v. Anderson*, 210 Ga. 464, 471 (80 SE2d 807) (1954); *In the Matter of Estate of Roosa*, 753 P2d 1028 (Wyo. 1988) (the appointment of a guardian under the Uniform Veterans' Guardianship Act does not result in a presumption of insanity or lack of testamentary capacity). But see *Rymer v. Smith*, 38 Tenn. App. 414 (274 SW2d 643) (1954).

[3] OCGA § 29-6-11 (c) states:

Unless a guardian under this chapter ["Guardians of Beneficiaries of United States

which it found that the propounded will was the last will and testament of the decedent as alleged by the propounder and that all other requirements of law had been fulfilled; admitted the propounded will to probate as proved in solemn form; and gave the named executor leave to qualify in order that Letters Testamentary might issue to him. The order also noted that the guardian ad litem had brought to the court's attention that Cross was disqualified under OCGA § 29-6-11 (c) from receiving the Robertson bequest and that the guardian had submitted his position as to how the portion of the estate left to Cross should be distributed. The probate court concluded that any interested party could file a petition for determination of the parties entitled to participate in the distribution of the estate.

Because the named executor failed to qualify, appellee Stokes filed a petition in March 2001 in probate court asking for issuance to her of Letters of Administration with Will Annexed. Her petition was granted in April 2001, with the proviso that she file a petition for declaratory judgment to determine how the residuum of the estate was to be distributed prior to making final distribution. A week later, appellant Cross filed in the probate court a petition for declaratory judgment in which he sought a determination that the statute which purportedly disqualified him from being a beneficiary of the will, OCGA § 29-6-11 (c), was unconstitutional; two weeks after that filing, appellee Stokes filed a petition for declaratory judgment in the probate court pursuant to the probate court's April 2001 order. In January 2002, the probate court issued an order on appellant's declaratory judgment petition, ruling that OCGA § 29-6-11 (c) was constitutional and that the statute applied to appellant and the ward's entire estate. This appeal followed.

1. The first matter to be addressed is one of appellate jurisdiction. In an amicus brief, the guardian ad litem questions whether appellant's appeal was timely filed. The guardian acknowledges that appellant timely filed his notice of appeal from the probate court's final order on appellant's petition for declaratory judgment, but suggests that appellant was required to file a notice of appeal within 30 days of the probate court's November 2000 order in which the probate court admitted the will to probate in solemn form and implicitly determined that OCGA § 29-6-11 (c) disqualified appellant Cross from receiving the bequest left him by the testator. See OCGA § 5-6-38 (a) (notice of appeal must be filed within 30 days after entry of the

Department of Veterans Affairs"] is the next of kin under the laws of descent and distribution of the State of Georgia, no such guardian shall be named as a beneficiary under the last will and testament of his or her ward under any will executed while the guardian is serving as such. Any provision in any such will to the contrary shall be null and void.

appealable judgment complained of). We conclude that the portion of the November 2000 judgment at issue is void because the probate court was without jurisdiction to pass on the question of the validity of a bequest contained in the will in a proceeding to probate a will in solemn form.

> "Where the executors are propounding an alleged will for proof in solemn form, the issue, and the only issue, is devisavit vel non," — whether the paper propounded is, or is not, the last will and testament of the deceased. . . . "[W]here a will was properly executed by a person having testamentary capacity, the court should order it to probate and record, leaving all questions of construction and the fate of . . . particular bequests for action of the parties or future direction in the proper court. . . ." [G]enerally, when a will is offered for probate . . ., there are only three matters for consideration: (1) the legal execution of the will; (2) the testamentary capacity of the testator; and (3) the presence or absence of undue influence, fraud, or mistake in the execution of the will. The construction of an item of the will and the question of the validity thereof is for some other forum. The probate of a will is merely conclusive of the factum of the will.

*Trustees of the Univ. of Georgia v. Denmark*, 141 Ga. 390, 400-401 (81 SE 238) (1913), overruled on other grounds in *Hood v. First Nat. Bank of Columbus*, 219 Ga. 283 (133 SE2d 19) (1963). See also *In re Estate of Corbitt*, 265 Ga. 110 (454 SE2d 129) (1995). Because the probate court, in a proceeding to probate a will in solemn form, was without jurisdiction to determine whether a beneficiary of the will was statutorily disqualified from taking under the will, that portion of the probate court's judgment was void and a nullity.

While the portion of the November 2000 order that impliedly disqualified appellant as a beneficiary under the will is a nullity, the issue of appellant's status as a beneficiary was addressed by the probate court in its January 2002 order adjudicating appellant's petition for declaratory judgment, and the appeal before us is here as a result of a timely-filed notice of appeal from that judgment. Accordingly, we conclude that appellant was not required to file an appeal from the void portion of the November 2000 order admitting the will to probate in solemn form, and that the issues concerning the applicability and constitutionality of OCGA § 29-6-11 (c) are properly and timely before us.

2. The next jurisdictional issue is whether the probate court had

jurisdiction to issue a declaratory judgment. OCGA § 9-4-4 (a) permits

> any person interested as . . . [a] beneficiary in the administration of . . . the estate of a decedent . . . [to] have a declaration of rights or legal relations in respect thereto and a declaratory judgment . . . (3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

While OCGA § 9-4-2 gives superior courts the power to issue declaratory judgments, OCGA § 15-9-127 gives certain courts, including the Fulton County Probate Court, concurrent jurisdiction with superior courts with regard to the proceedings for declaratory judgments involving fiduciaries pursuant to OCGA § 9-4-4. Probate courts have exercised their declaratory judgment jurisdiction in several reported decisions. See, e.g., *Delbello v. Bilyeu*, 274 Ga. 776 (560 SE2d 3) (2002); *Emmertz v. Cherry*, 271 Ga. 458 (520 SE2d 219) (1999); *Lamb v. NationsBank*, 270 Ga. 388 (507 SE2d 457) (1998). See also *Simon v. Bunch*, 260 Ga. 201, n. 1 (391 SE2d 648) (1990); *Wausau Ins. Co. v. King*, 191 Ga. App. 329 (1) (381 SE2d 574) (1989). We conclude the probate court was empowered to issue a declaratory judgment in the case at bar.

3. Appellant contends that OCGA § 29-6-11 (c) is not applicable to him because it is expressly limited to "a guardian under this chapter" and he was not appointed as a DVA guardian of the testator pursuant to OCGA § 29-6-6 (a), but as a "general" guardian, the guardian of an incapacitated adult's person and property. See OCGA § 29-5-1 (a). The record reflects that appellant was initially appointed guardian of the person and property of Mr. Robertson in 1995; that appellant, at the request of the DVA, in 1996 asked the trial court to issue an amended letter of guardianship to reflect that appellant was serving as DVA guardian; and that the probate court issued an order in 1997 revoking the "general law" guardianship issued to Cross after determining it had been erroneously issued in lieu of a "VA" guardianship, and issued to Cross, nunc pro tunc, "Letters of Guardianship of the Property of a Veterans' Affairs Beneficiary." In light of this history, appellant will not be heard to say he was not serving as a DVA guardian.

Appellant next contends that § 29-6-11 (c) is not applicable to him because it is statutorily limited to those guardians appointed under the provisions set forth in the 1996 revision of Chapter Six of Title 29, and he was not appointed pursuant to those procedures. One of the statutory procedures for appointment of a DVA guardian is "[w]henever . . . the secretary of veterans affairs requires, prior to

payment of benefits, that a guardian be appointed for a ward, the appointment shall be made in the manner provided in this chapter." OCGA § 29-6-2. In 1952, the secretary issued a certificate that the testator was rated incompetent by the DVA and required that a guardian be appointed before payment of veterans benefits, causing the testator's father to apply for appointment as his son's DVA guardian. Upon the death of the testator's father/DVA guardian, the testator's mother was appointed and, upon her death, appellant was appointed. That the probate court erroneously issued letters of "general" guardianship instead of DVA guardianship is of no moment now since that error was corrected. Since appellant's appointment as successor guardian has its roots in a request by the secretary of veterans affairs that a guardian be appointed for the testator, we conclude that appellant was appointed pursuant to the statutory procedure.

4. Appellant next complains that OCGA § 29-6-11 (c) violates the Georgia constitutional prohibition against passage of a bill "which . . . contains matter different from what is expressed in the title thereof." Ga. Const. 1983, Art. III, Sec. V, Par. III. One of the purposes of the constitutional provision is to prevent "surprise legislation." *Mead Corp. v. Collins*, 258 Ga. 239 (1) (367 SE2d 790) (1988).

> If what follows after the enacting clause is definitely related to what is expressed in the title, has a natural connection, and relates to the main object of legislation and is not in conflict therewith, there is no infringement of the constitutional inhibition. . . . Any provision in the body which is germane to this general purpose as embraced in the title would not be violative of the constitutional provision. . . . It is well settled that provisions germane to the general subject-matter embraced in the title of the act and which are designed to carry into effect the purposes for which it was passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by the use of the words "and for other purposes."

*Cady v. Jardine*, 185 Ga. 9, 11 (193 SE 869) (1937). The 1996 legislation that contained what has been codified as § 29-6-11 (c) was entitled, "Guardian and Ward — Guardians' Compensation and Expenses; Guardianship of Beneficiaries of United States Department of Veterans Affairs." 1996 Ga. L. 1174. Among the legislation's stated purposes was "to provide for a comprehensive change in the guardianship of beneficiaries of the United States Department of Veterans Affairs . . . and for other purposes." Id. OCGA § 29-6-11 (c), which prohibits a DVA guardian who is not the ward's next of kin to be a beneficiary under the last will and testament executed by the

ward while the DVA guardian/beneficiary was DVA guardian, meets the criteria set forth in *Cady v. Jardine* and does not violate Art. III, Sec. V, Par. III. See also *Randolph v. State*, 269 Ga. 147 (1) (496 SE2d 258) (1998); *Hussey v. Chatham County*, 268 Ga. 871 (1) (494 SE2d 510) (1998); *Mead Corp. v. Collins*, supra; *Frazer v. City of Albany*, 245 Ga. 399, 401 (265 SE2d 581) (1980).

5. Appellant next contends OCGA § 29-6-11 (c) violates the equal protection clauses of the U. S. and Georgia constitutions because it imposes a testamentary restriction on veterans receiving DVA benefits who have been rated incompetent by the DVA and have a guardian, and that restriction is not imposed on persons who have a guardian and who are not receiving DVA benefits.

The protections provided in the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and in Article I, Section I, Paragraph II of the Georgia Constitution are construed to be consistent. *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393 (3) (467 SE2d 875) (1996). Where, as here, no fundamental right or suspect classification is involved, the legislative classification is examined under the "rational basis" test. *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657 (1) (437 SE2d 308) (1993).

> Under [the rational basis] test, the court will uphold the statute if, under any conceivable set of facts, the classification bears a rational relationship to a legitimate end of government not prohibited by the Constitution. [Cit.] Those challenging the statute bear the responsibility to "convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." [Cit.]

Id. As the trial court noted, the State has a legitimate interest in regulating DVA guardianships and protecting DVA wards. OCGA § 29-6-11 (c)'s prohibition of a DVA guardian being a beneficiary under the will of the guardian's DVA ward is a legitimate means by which the State can regulate DVA guardianships and protect DVA wards. In essence, appellant contends § 29-6-11 (c) is unconstitutional because it is underinclusive since it does not protect all persons with guardians.

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Cit.] Or the reform may take one step at a time, addressing itself to

the phase of the problem which seems most acute to the legislative mind. [Cit.] The legislature may select one phase of one field and apply a remedy there, neglecting the others. [Cit.] The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.

*Williamson v. Lee Optical of Okla.*, 348 U. S. 483, 489 (75 SC 461, 99 LE 563) (1955). See also *Barber v. Municipality of Anchorage*, 776 P2d 1035 (Alaska 1989) ("[A] statute is not invalid merely because it might have gone further than it did."); *DOT v. Armacost*, 299 Md. 392, 409 (474 A2d 191) (1984) ("Underinclusiveness does not create an equal protection violation under the rational basis test."). Inasmuch as the State has a legitimate interest in the protection of DVA wards and the regulation of DVA guardians and OCGA § 29-6-11 (c) bears a rational relationship to that interest, the fact that the State has the same legitimate interest in guardian-ward relationships not covered by § 29-6-11 (c) does not make § 29-6-11 (c) unconstitutional under the rational basis test.

6. Lastly, appellant contends that the statutory proscription against a guardian who is not the DVA ward's next of kin being a beneficiary of the ward's last will and testament should be limited to the property over which the guardian had control, i.e., "only moneys received by the guardian from the United States Department of Veterans Affairs and all earnings, interest, and profits derived therefrom." OCGA § 29-6-1 (2). "In construing a legislative act, a court must first look to the literal meaning of the act. [Cit.] If the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms and conducts no further inquiry. [Cit.]" *Diefenderfer v. Pierce*, 260 Ga. 426, 427 (396 SE2d 227) (1990). The statute clearly and plainly prohibits a DVA guardian who is not his ward's next of kin from being named as a beneficiary in the last will and testament of the ward. Inasmuch as the statute is not ambiguous regarding the property covered by the prohibition, we construe it according to its terms and conclude that a non-next-of-kin DVA guardian may not be named in his ward's last will and testament as the beneficiary of any bequest.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 12, 2002 —
RECONSIDERATION DENIED DECEMBER 13, 2002.

*Cross & Rosenzveig, Bette E. Rosenzveig*, for appellant.

*Rich & Smith, Michael T. Smith, William D. Carter, Jr., Stanley J. Turner, Rubin & Hoyt, Robert P. Hoyt,* for appellees.