A04A1789. IN RE ESTATE OF ROBERTSON.

(611 SE2d 680)

RUFFIN, Chief Judge.

This dispute involves the administration of the estate of George Guess Robertson, who died in 1999. On February 25, 2004, the probate court ordered John Cross, Robertson's Department of Veterans Affairs ("DVA") guardian,[1] to turn over $226,094.66 to Zetta Stokes, the estate's administrator with will annexed. In nine enumerations of error, Cross appeals that order and several other rulings below. Finding no error, we affirm.

This is the second time that this case has been before a Georgia appellate court. In 2002, our Supreme Court decided *Cross v. Stokes*,[2] which adjudicated Cross' status as a beneficiary and provides a synopsis of the facts underlying the dispute. As noted in *Cross*, Robertson's will left one-half of his estate to Stokes and one-half to Cross, the DVA guardian. The probate court admitted the will to probate through a November 2000 order. In that same order, the probate court indicated that Cross was disqualified as a beneficiary under OCGA § 29-6-11 (c), which provides:

> Unless a [DVA guardian] is the next of kin under the laws of descent and distribution of the State of Georgia, no such guardian shall be named as a beneficiary under the last will and testament of his or her ward under any will executed

---

[1] In certain situations, the United States Department of Veterans Affairs may require that a guardian be appointed for an individual entitled to benefits from the Department. OCGA § 29-6-1 et seq. governs the appointment of DVA guardians. See OCGA § 29-6-2.

[2] 275 Ga. 872, 874 (1) (572 SE2d 538) (2002).

while the guardian is serving as such. Any provision in any such will to the contrary shall be null and void.

Cross subsequently filed a petition for declaratory judgment regarding the constitutionality of OCGA § 29-6-11 (c). In January 2002, the probate court deemed the statute constitutional and found that it applied to Cross. Cross then appealed to the Supreme Court, which affirmed the trial court's ruling.[3]

In so doing, the Supreme Court first determined that the probate court's November 2000 ruling disqualifying Cross as a beneficiary was void because, "in a proceeding to probate a will in solemn form, [the probate court is] without jurisdiction to determine whether a beneficiary of the will [is] statutorily disqualified from taking under the will."[4] The Supreme Court further noted, however, that the probate court addressed Cross' "status as a beneficiary" in its January 2002 ruling on the declaratory judgment petition.[5] Thus, "the issues concerning the applicability and constitutionality of OCGA § 29-6-11 (c)" were properly before the Court.[6] And it ultimately agreed with the probate court that the statute was both constitutional and applicable to Cross.[7]

One month after the case returned to the probate court, Cross filed a motion to recuse Judge Floyd Propst, the probate judge who had been presiding over the estate proceedings. According to Cross, Judge Propst improperly investigated facts in the case and had engaged in ex parte communications. Pursuant to Uniform Probate Court Rule 19.2, Propst referred the recusal request to a state court judge, who held a hearing and denied Cross' motion.

On January 12, 2004, the probate court issued a rule nisi ordering Cross to show cause on February 25, 2004, why he should not be compelled to turn over to Stokes all estate assets in his possession. The rule nisi also required Cross to submit "an updated accounting through December 31, 2003[,] along with a verification of balance on deposit from the financial institution in which the funds are held." In response, Cross filed a notice of appeal challenging the probate court's order that he provide an accounting of estate assets. Stokes moved to dismiss Cross' notice of appeal, asserting that the rule nisi was not directly appealable. The probate court agreed and dismissed the appeal. Although Cross appealed that dismissal to this Court, we dismissed the appeal as moot in May 2004.

---

[3] See id. at 878 (6).

[4] Id. at 874.

[5] See id.

[6] Id.

[7] See id. at 875-878 (3)-(6).

On February 25, 2004, the probate court conducted the hearing noticed in the January 12, 2004 rule nisi. Cross did not produce an accounting of estate assets under his control, and he refused to provide any specific information regarding those assets at the hearing. The probate court ultimately determined that Cross possessed $226,094.66 belonging to the estate and ordered that Cross turn the money over to Stokes, as the estate's administrator.

1. Cross first argues that the trial court erred in refusing to vacate Stokes' appointment as estate administrator. According to Cross, the appointment is void because Stokes failed to serve him, a named beneficiary under the will, with her petition for letters of administration.[8]

Stokes apparently did not serve her petition on Cross because, by the time she filed the petition, Cross had been disqualified as a beneficiary under the November 2000 order. As noted by Cross, the Supreme Court later declared that portion of the November 2000 order void.[9] Ultimately, however, the Supreme Court affirmed the probate court's conclusion that OCGA § 29-6-11 (c) is not only constitutional, but applicable to Cross. And under that statutory provision, any bequest by a ward to a DVA guardian who is not the ward's next-of-kin is "null and void."[10]

Pursuant to *Cross* and OCGA § 29-6-11 (c), Cross is not a proper beneficiary under Robertson's will. In short, he has no interest in the distribution of the estate. And he has not shown that he has any interest in the estate's administration.[11] Under these circumstances, Cross lacks standing to challenge Stokes' appointment as estate administrator.[12] Accordingly, we find no error in the probate court's refusal to vacate the appointment.[13]

2. In a related enumeration of error, Cross argues that the Supreme Court's decision in *Cross* does not disqualify him as a beneficiary under the will. Cross contends that the Supreme Court merely affirmed the probate court's declaratory judgment ruling, which found OCGA § 29-6-11 (c) both applicable and constitutional, without addressing his beneficiary status. He further claims that,

---

[8] See OCGA § 53-6-15 (b).

[9] See *Cross*, supra at 874.

[10] OCGA § 29-6-11 (c).

[11] We note that, even according to Cross, his guardianship ended with Robertson's death "for all purposes except filing a final accounting." See also OCGA § 29-5-9 (e).

[12] See *McClinton v. Sullivan*, 263 Ga. 711, 712 (1) (438 SE2d 71) (1994); *Pharis v. Perry*, 193 Ga. 125, 127-128 (17 SE2d 545) (1941).

[13] See *McClinton*, supra.

since the probate court issued its void November 2000 disqualification order, no party has moved for his disqualification and no court ruling has deemed him disqualified.

We disagree. As noted by the Supreme Court, the probate court's declaratory judgment ruling addressed Cross' "status as a beneficiary."[14] The Supreme Court then affirmed that ruling, finding OCGA § 29-6-11 (c) constitutional and applicable to Cross.[15] Moreover, Stokes has asserted in filings and arguments made after the November 2000 disqualification order that Cross is not a proper beneficiary. And the probate court stated during the February 25, 2004 hearing that "[Cross] cannot take under this will," a decision clearly supported by the *Cross* decision. The probate court then directed Cross to turn over all estate assets in his possession to Stokes. Under these circumstances, any conclusion that Cross has not been disqualified as a beneficiary would be illogical and would unnecessarily expand the proceedings.

3. Cross also argues that the probate court fraudulently "conspired" with Stokes and Stanley Turner, a guardian ad litem assigned to represent unknown heirs, to appoint Stokes administrator and "get [him] disqualified." But Cross is, in fact, disqualified as a beneficiary as a matter of law.[16] Thus, his assertion that the probate court and others fraudulently conspired to achieve this result lacks merit. Furthermore, because Cross has no standing to object to Stokes' appointment as the estate's administrator,[17] we fail to see how he can complain about an alleged conspiracy regarding that appointment.

4. Cross also claims that the probate court erred in reappointing Turner as guardian ad litem after the court admitted the will to probate. The record shows that the probate court initially appointed Turner as guardian ad litem to "mak[e] the appropriate investigation" on behalf of unknown heirs and report to the court during the pendency of the probate petition. After the probate court admitted the will to probate, it reappointed Turner as guardian to represent unknown heirs in connection with Cross' petition for declaratory judgment.

Cross argues that the probate court lacked authority to reappoint Turner because the original appointment was for a "limited purpose." The original appointment, however, clearly states that "it shall cease when a final order is entered on the petition to probate will

---

[14] *Cross,* supra at 874.

[15] See id. at 875-878.

[16] See OCGA § 29-6-11 (c).

[17] See *McClinton,* supra.

in solemn form, *unless otherwise extended by the court.*[18] The probate court extended the appointment here to give unknown heirs representation with respect to the declaratory judgment petition. Cross has cited no authority prohibiting such appointment. Moreover, the declaratory judgment petition related directly to Cross' status as a beneficiary, a possible issue of interest to unknown heirs who might have some claim to the bequest to Cross.[19] Finally, even if some error occurred, given Cross' disqualification as a beneficiary, he lacks standing to challenge Turner's reappointment.[20]

5. Next, Cross contends that the state court judge erred in failing to recuse Judge Propst from the probate proceedings. In reviewing a ruling on a motion to recuse, we employ an abuse of discretion standard.[21]

Although rather amorphous, Cross' allegations against Judge Propst involve an alleged appearance of impropriety. According to Cross, Judge Propst and his staff engaged in "extensive" ex parte communications and independently investigated facts. Cross further claims that Judge Propst showed bias against him by reappointing Turner as guardian ad litem, approving Turner's request to employ appellate counsel during Cross' appeal to the Supreme Court, and granting Turner's motion to have his fees and the fees of his associated appellate counsel paid by the estate.

To support these allegations, Cross attached to his motion: (1) a memorandum purportedly written to Judge Propst by a member of his staff; (2) Stokes' petition for letters of administration and the order granting that petition; (3) a letter from Stokes' counsel indicating that a member of Judge Propst's staff inquired by telephone whether he had any objection to a motion to supplement the appellate record and/or Turner's request for fees; (4) Turner's petition for attorney fees and to associate appellate counsel; and (5) Judge Propst's order granting that petition. Cross' counsel also testified by affidavit that a probate court staff member inquired whether she had any response to Turner's fee request and asked her to participate in a telephone conference about possibly placing the money held by Cross in a special fund under Judge Propst's name. Cross presented no further evidence at the hearing on the motion to recuse.

To support disqualification based on partiality, a trial judge's alleged bias must be

---

[18] (Emphasis supplied.)

[19] See OCGA § 53-11-2 (b) ("When a party to a proceeding in the probate court is . . . unknown, that party shall be represented in the proceeding by a guardian.").

[20] See *McClinton*, supra.

[21] See *In the Interest of J. E. T.*, 269 Ga. App. 567, 570 (2) (604 SE2d 623) (2004).

of such a nature and intensity to prevent the [complaining party] from obtaining a trial uninfluenced by the court's prejudgment. To warrant disqualification of a trial judge the affidavit supporting the recusal motion must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.[22]

Such bias "must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."[23] Actual impropriety need not be shown.[24] It is enough that the judge's impartiality "might reasonably be questioned."[25] This questioning, however, requires a reasonable perception "held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates, seeking to judge shop and to gain a trial advantage, because both of their credibility is suspect from self-interest."[26]

We find no abuse of discretion in the state court's refusal to disqualify Judge Propst. The alleged ex parte communications involved telephone calls to counsel for both Stokes and Cross regarding whether the parties objected to various motions, as well as a request that Cross participate in a telephone conference with Judge Propst. Moreover, the only evidence presented by Cross to support his "improper investigation" allegation is an inadmissible hearsay document lacking in probative value.[27]

Neither the "evidence" offered by Cross, nor the probate court's decision to appoint and compensate a guardian ad litem to represent unknown heirs in this case, would cause a fair minded individual to question Judge Propst's impartiality.[28] Simply put, Cross failed to show a sufficient bias on the part of Judge Propst to require disqualification.

On appeal, Cross argues that the state court erred in summarily denying his motion to recuse without entering written findings of fact and conclusions of law. Unlike the Uniform Superior Court Rules,

---

[22] (Punctuation omitted.) *Gillis v. City of Waycross*, 247 Ga. App. 119, 120 (543 SE2d 423) (2000).

[23] (Punctuation omitted.) Id.

[24] See id.

[25] (Punctuation omitted.) Id.

[26] (Punctuation omitted.) *Brewer v. Waldroup*, 259 Ga. App. 479, 481 (578 SE2d 139) (2003).

[27] See *Hagan v. Goody's Family Clothing*, 227 Ga. App. 585, 586 (490 SE2d 107) (1997) ("Hearsay is never admissible and has no probative value unless it comes within a recognized exception to the rule.").

[28] See *Brewer*, supra.

however, the Uniform Probate Court Rules do not require that a judge hearing a motion to recuse enter written findings of fact and conclusions of law.[29] Finally, we note that, in his appellate brief, Cross asserts that several actions taken by Judge Propst *after* the denial of the motion to recuse demanded Propst's disqualification. But Cross has cited no record evidence that he filed a motion to recuse or supporting affidavit regarding these actions, as required by Uniform Probate Court Rule 19.1. Accordingly, these allegations present no basis for reversal.

6. Cross contends that the probate court erroneously prohibited him from arguing that Stokes forfeited her bequest by violating the will's in terrorem clause.[30] As discussed above, however, Cross has no interest in the estate and thus lacks standing to challenge Stokes' right to take under the will.[31] Accordingly, this enumeration of error fails.

7. In three enumerations of error, Cross challenges several aspects of the probate court's ruling following the February 25, 2004 hearing.

(a) First, Cross argues that the probate court lacked jurisdiction to conduct the hearing and issue a ruling because it improperly dismissed his notice of appeal relating to the rule nisi. We disagree. On May 24, 2004, we dismissed as moot Cross' appeal of that dismissal. In our dismissal order, we noted that the trial court properly dismissed his notice of appeal and that, had the appeal reached this Court, we would have dismissed it.

We recognize that, during the early stage of the February 25, 2004 hearing, Cross filed a notice of appeal relating to the probate court's dismissal order. That filing, however, did not divest the probate court of jurisdiction to complete the hearing and issue its February 25, 2004 order compelling Cross to pay Stokes $226,094.66. In civil cases, "[a] notice of appeal . . . shall serve as supersedeas upon payment of all costs in the trial court by the appellant."[32] The record shows that Cross did not pay the court costs associated with his dismissal order appeal until May 12, 2004. Accordingly, the trial court retained jurisdiction to conduct the hearing and issue the February

---

[29] Compare Uniform Probate Court Rule 19 with Uniform Superior Court Rule 25.6.

[30] An in terrorem clause is "[a] provision in a document such as a lease or will designed to frighten a beneficiary or lessee into doing or not doing something; e.g. clause in a will providing for revocation of a bequest or devise if the legatee or devisee contests the will." Black's Law Dictionary (5th ed.), p. 735.

[31] See *McPherson v. McPherson*, 254 Ga. 122, 123-124 (3) (327 SE2d 204) (1985).

[32] OCGA § 5-6-46 (a).

25, 2004 order.[33]

(b) Cross next argues that the probate court improperly ordered him to turn over funds pursuant to OCGA §§ 29-2-44, 29-2-45, and 29-2-76. Again, we disagree.

Pursuant to OCGA § 29-6-12, a DVA guardian must file with the probate court an annual accounting of the ward's assets, including a list of all expenditures and investments. And, under the general laws of guardianship, which apply to DVA guardians,[34] the DVA guardian must submit this accounting each year within 60 days following the anniversary date of the guardian's qualification.[35] If the guardian fails to make such annual accounting, the probate judge may, in his discretion, "[r]equire the guardian to appear and submit to a settlement of his accounts" and/or "[p]ass such other order as in his judgment is expedient under the circumstances of each case."[36] The account settlement must comply with the procedures set forth in OCGA § 29-2-76, which provides that if the guardian fails or refuses to appear for the settlement proceedings, the probate court "may proceed without the appearance of the guardian."

The record shows that Cross filed an accounting of Robertson's assets in August 1999, shortly after Robertson died. Since then, however, he has submitted no further accounting, despite continuing to hold the assets. Given Cross' failure to file an annual accounting after 1999, the probate court determined that it was authorized to require him to settle the accounts.

We find no error. Although Cross argues that only the ward or a newly appointed guardian can seek a settlement of accounts, OCGA § 29-2-45 (a) (2) clearly permits a probate court to demand such settlement if a guardian fails to make the required annual accountings. Cross further claims that the accounting requirements only apply "during the pendency of the guardianship" and do not control after the ward dies. But nothing in the guardianship provisions cited by Cross or OCGA § 29-6-12 relieves a guardian holding the assets of a deceased ward from making an annual accounting.[37]

---

[33] See id.; *Atlanta Propeller Svc. v. Hoffmann GMBH & Co. KG*, 191 Ga. App. 529, 531 (3) (382 SE2d 109) (1989).

[34] See OCGA § 29-6-17.

[35] See OCGA § 29-2-44 (a).

[36] OCGA § 29-2-45 (a).

[37] In fact, OCGA § 29-6-12 provides that a DVA guardian must make an accounting of the ward's assets "so received by [the guardian] and all disbursements thereof, showing the balance in his . . . hands at the date of the accounting and how it is invested." Without dispute, Cross has retained control over Robertson's assets since Robertson died in 1999. And we must construe OCGA § 29-6-12 liberally "to secure the beneficial intents and purposes thereof." OCGA § 29-6-18. We see no reason, therefore, why Robertson's death ended Cross' obligation to file an annual accounting.

Cross also argues that he did not receive a proper "citation" under Uniform Probate Court Rule 22 notifying him of the account settlement proceedings on February 25, 2004. He further claims that the probate court failed to inform the Department of Veterans Affairs of the February 25, 2004 hearing, as required by OCGA § 29-6-14. The probate court, however, clearly provided Cross with notice of the hearing through its January 12, 2004 rule nisi. And Cross has not shown that he raised below any argument regarding compliance with Uniform Probate Court Rule 22 or OCGA § 29-6-14. Issues — such as these — that are raised for the first time on appeal present nothing for this Court to review.[38]

(c) Finally, Cross contends that the probate court issued a speculative and improper judgment when it ordered him to pay $226,094.66 to Stokes. The record shows that, in calculating this amount, the probate court took the balance of the assets reported in Cross' 1999 accounting, subtracted the only expense that Cross testified about with any specificity at the February 25, 2004 hearing, then applied the seven percent per annum legal rate of interest in OCGA § 7-4-2 (a) (1) (A). On appeal, Cross argues that the trial court erred in applying the seven percent interest rate.

Under OCGA § 29-2-81 (1), "[t]he rate of interest which shall be charged against a guardian on funds held by him without investment and without an order of court authorizing the funds to be held uninvested shall be the same as that provided by law." At the February 25, 2004 hearing, Cross testified that the estate's money is held in "interest bearing accounts." But when asked for information about those accounts, such as their location, Cross refused to answer, stating only that he has the money in at least three "savings accounts." And he submitted no documentation regarding the accounts or the interest earned. Finding that Cross failed to meaningfully participate in the hearing, the probate court determined that he had refused to appear and calculated the estate assets based on the 1999 accounting "and the limited testimony at the hearing, as though [Cross] ha[d] not otherwise been present."[39]

Once again, we find no error. Cross chose not to participate in the hearing or to establish that he had invested the assets. Despite conclusory statements about "savings accounts" and "interest bearing accounts," he offered absolutely no information about those accounts, their location, or the interest earned. Given these extreme circumstances, the probate court was authorized to conclude under

---

[38] See *Bodenhamer v. Wooten*, 265 Ga. App. 733, 735 (1) (595 SE2d 592) (2004).

[39] See OCGA § 29-2-76 ("If the guardian fails or refuses to appear as cited, the court may proceed without the appearance of the guardian.").

OCGA § 29-2-76 that he failed to appear with respect to this issue, that the funds are not invested, and that the seven percent legal rate of interest applies.[40] Moreover, although Cross vaguely asserts on appeal that "there is no record as to how the interest was calculated," he has made no effort to show that the trial court erred in its calculations. Accordingly, Cross' challenge to the trial court's monetary judgment lacks merit.[41]

*Judgment affirmed. Adams and Bernes, JJ., concur.*

Decided February 25, 2005 —

*Cross & Rosenveig, Bette E. Rosenveig*, for appellant.
*Andrew, Merritt, Reilly & Smith, Michael T. Smith*, for appellee.
*Stanley J. Turner*, amicus curiae.

---

[40] See OCGA § 29-2-81 (1). Cross' reliance on OCGA § 29-2-85, which relates to disposition of money in the hands of a guardian seeking letters of dismission, is misplaced. Cross has pointed to no evidence that he sought letters of dismission in this case. We also disagree with Cross that the probate court improperly awarded "prejudgment interest." Instead, it applied the legal rate of interest to the estate funds held by Cross pursuant to OCGA § 29-2-81 (1).

[41] In her appellate brief, Stokes asks this Court to assess frivolous appeal penalties against Cross. After due consideration, this request is hereby denied.