## S05A1858. ENGLISH v. RICART.

(626 SE2d 475)

MELTON, Justice.

In this case, we are asked to consider whether the probate court erred by finding that Beatrice Ricart, who married Robert English ("Decedent") a number of years following his execution of a will which did not contemplate their marriage, had not waived her right to an intestate share of the estate under OCGA § 53-4-48[1] because she initially assented to the petition to probate the will in solemn form. Under the facts of this case, we find that Ricart has not waived this right.

The record shows that, after divorcing his first wife, Decedent left his entire estate in trust to his two sons, Tyler and Blake, pursuant to a will executed on June 8, 1994. This will does not contemplate future marriages. In 1999, Decedent hired Ricart, a citizen of France, to be his sons' au pair. In June 2001, Decedent married Ricart in a secret ceremony, but he made no changes to his will to provide for his new wife. Decedent died on November 22, 2004, and his 1994 will was offered for probate in solemn form on January 7, 2005. The petition for probate was filed by Decedent's brother and executor, William F. English, and the petition listed Ricart as Decedent's current spouse and an heir of the estate.[2] An "Acknowledgment of Service and Assent to Probate Instanter" signed by Ricart was attached to the petition.

Both of Decedent's sons filed answers to the petition to probate on February 7, 2005. In his answer, Tyler contended that Ricart was not Decedent's legal wife, that Ricart's prior assent to probate waived any rights she may have had pursuant to OCGA § 53-4-48 to take under the will, and that William English should be removed as executor of the estate because he had refused to investigate the validity of Ricart's marriage to Decedent. Tyler also requested a hearing. Through a guardian, Blake contended that William English was not properly investigating the marriage, and he requested a hearing as well.[3]

On March 2, 2005, Ricart filed a motion "for clarification of her status as an heir under OCGA § 53-4-48."[4] On April 11, 2005, Ricart filed a follow-up motion to which she attached a copy of her marriage

---

[1] Subsection (c) of this Code provision states: "If the will was made prior to [the testator's marriage] and does not contain a provision in contemplation of such [marriage], the subsequent spouse . . . shall receive the share of the estate he or she would have received if the testator had died intestate."

[2] At the time that he filed the petition, William English assured Ricart that she would receive one-third of Decedent's estate.

[3] William English later renounced his position as executor on February 24, 2005.

[4] The probate court treated this motion as one for declaratory judgment. See OCGA § 9-4-4.

certificate. In this motion, Ricart rescinded her prior acknowledgment and assent to the petition to probate. Following a subsequent hearing, the trial court entered an order determining that, despite the fact that Ricart assented to the probate of the will in solemn form prior to filing any motion which could be considered an assertion of her statutory entitlement, Ricart had not waived her right to make a claim pursuant to OCGA § 53-4-48. Tyler now takes issue with this ruling on appeal.

1. Tyler contends that the trial court erred by allowing Ricart to assert her statutory right to an intestate share after her initial acknowledgment and assent to the petition to probate the will. In support of his claim that Ricart waived and renounced any of her rights under OCGA § 53-4-48, Tyler points to the fact that the petition to probate included standard language informing Ricart that any objection to the will would have to be filed within ten days of service of the petition.

The nature of the probate court's discretion regarding the timing of responses to petitions to probate, however, is statutory. OCGA § 53-11-5 provides, in relevant part: "The probate judge may . . . extend the time to respond with respect to any proceedings covered by this chapter as the judge may determine to be proper in the interests of due process and reasonable opportunity for any party or interest to be heard." OCGA § 53-11-10 (a) further states: "Except as otherwise prescribed by law or directed by the judge pursuant to Code Section 53-11-5 with respect to any particular proceeding, the date on or before which any objection is required to be filed shall be not less than ten days after the date the person is personally served."

Prior to the time that the will has been probated, these statutes provide the probate court with discretion to extend the time for the filing of responses or objections to a will in order to preserve the interests of justice. This discretion, in turn, would allow the probate court to extend Ricart's time in which to object or raise her claim under OCGA § 53-4-48 prior to the probate of the will in order to safeguard the intent of the legislature to provide for "after-married spouses" through the partial revocation of a will by operation of law. Therefore, under the facts of this case in which the will had not yet been admitted to probate, the probate court did not err in its determination that Ricart had not waived her right to make a claim pursuant to OCGA § 53-4-48 in order to affect the intent of that statute.

In support of his argument, Tyler cites numerous cases for the proposition that, once an individual has assented to the immediate probate of a will with full knowledge of its contents, he or she is estopped from later contesting the will *after it has been probated*. See, e.g., *Sutton v. Hancock*, 118 Ga. 436 (45 SE 504) (1903) (question of

whether a will is revoked by birth of child subsequent to execution cannot be raised after probate in solemn form); *Clark v. Clark*, 265 Ga. 434 (1) (457 SE2d 564) (1995) (heir who assented to probate estopped from asserting that the will was not witnessed properly after probate occurred). These cases, however, simply are not applicable to the matter now before us because the will in question had not been probated at the time that Ricart asserted her rights under OCGA § 53-4-48 with the ultimate permission of the probate court.[5]

2. Tyler further contends that the probate court erred by failing to immediately probate the will after he submitted a proposed order to the court on February 15, 2005. In his brief, however, Tyler concedes that no statutory authority supports his argument that the trial court was required to act upon any proposed order within any specific amount of time. Furthermore, OCGA § 53-11-10 (b) provides: "Except as otherwise prescribed by law or directed by the judge with respect to any particular proceeding, the date on which any required hearing shall be held shall be the date by which any objection is required to be filed or such later date as the probate court may specify." In this case, both of Decedent's sons made it clear to the probate court from the earliest point that issues regarding Ricart's status as an heir remained to be determined, and, in fact, each requested a hearing regarding William English's failure to contest this very matter. The trial court ultimately held a timely hearing regarding the matter on which Decedent's sons requested relief. In doing so, the probate court properly dealt with the necessary issues with which it was confronted.

*Judgment affirmed. All the Justices concur, except Carley and Thompson, JJ., who concur specially.*

CARLEY, Justice, concurring specially.

I concur fully in the affirmance of the probate court's holding that Ms. Ricart's assent to the probate of her late husband's will did not constitute a waiver of her right to an intestate share of his estate. I do not, however, agree with the majority's reason for reaching that conclusion.

According to the majority, the probate court did not err "under the facts of this case in which the will had not yet been admitted to probate. . . ." P. 216. Thus, the majority notes that it does

not reach the issue of whether an after-married spouse who assents to the probate of a will in solemn form retains the

---

[5] We do not reach the issue of whether an after-married spouse who assents to the probate of a will in solemn form retains the right, as a matter of law, to object to the will or raise a claim under OCGA § 53-4-48 after the will has been admitted to probate.

right, as a matter of law, to object to the will or raise a claim under OCGA § 53-4-48 after the will has been admitted to probate.

P. 217, fn. 5. In my opinion, however, it is immaterial whether the surviving spouse asserts his or her rights under the statute before or after probate. As the probate court observed:

> A caveat to [the] probate of a will alleges facts as to why the will should not be probated. [Cit.] Here, the will is not being challenged for its validity[,] but rather[,] it is only being claimed that, by operation of law, the will is "partially revoked" and the subsequent spouse should receive an intestate share pursuant to OCGA § 53-4-48 [(c)]. [Mr. English's] argument and citation of supporting case law all relate to the pre-2002 amendment of OCGA § 53-4-48 which provided for total revocation of a will. It appears . . . that, by the plain language of the statute, the subsequent . . . spouse "shall" receive an intestate share by operation of law. After the probate of the will and issuance of Letters Testamentary, the Executor would then distribute according to the terms of the will and also pursuant to the statute.

Consistent with the probate court's analysis, the clear and obvious intent of the General Assembly in amending OCGA § 53-4-48 in 2002 was to uphold the validity of a will, and thereby dispense with the procedural applicability of a caveat, in the limited situations where the testator married or became a parent after executing a will which had not been made in contemplation of such events. " 'Waiver is a voluntary relinquishment of some known right, benefit, or advantage which, except for such waiver, the party otherwise would have enjoyed.' [Cits.]" *New York Underwriters Ins. Co. v. Noles*, 101 Ga. App. 922, 924 (115 SE2d 474) (1960). Ms. Ricart's consent to the probate of her husband's will was completely consistent with her statutory claim to an intestate share. Indeed, under OCGA § 53-4-48, her right to an intestate share of the estate was dependent upon the probate of the will which preceded, but did not contemplate, her marriage to the testator.

As the majority notes, Mr. English relies on *Sutton v. Hancock*, 118 Ga. 436 (45 SE 504) (1903), which holds that the question of

> "[w]hether the paper propounded as a will has been revoked by the birth of a child subsequently to the execution of the will and prior to the judgment of probate is a question which *can be raised* by caveat in the probate proceedings, and the

judgment admitting the will to record concludes the question as to whether there has been a revocation for this reason." [Cit.] (Emphasis supplied.)

*Lawson v. Hurt*, 217 Ga. 827, 829 (125 SE2d 480) (1962). See also *Clark v. Clark*, 265 Ga. 434 (1) (457 SE2d 564) (1995) (validity of execution of will waived unless raised prior to probate). However, the very issue presented in this case is whether, after the 2002 amendment to OCGA § 53-4-48, a caveat still must be filed in the limited situations where a birth, adoption or marriage occurs subsequent to the execution of the will which made no provision in contemplation of such an event. Prior to 2002, those occurrences would have resulted in a revocation of the entirety of a will, so that a caveat was the appropriate procedural vehicle to raise the issue. However, the obvious purpose of the amendment of the statute is to preserve the will, and thereby effectuate the testator's intent, to the maximum extent possible. That ameliorative aim would be entirely frustrated by adhering to any former procedural requirement that the surviving child or spouse preserve his or her right to an intestate share by filing a caveat. Under the present law, a surviving child or spouse does not have to claim that the will has been revoked in its entirety. The result is that a caveat is no longer necessary, since the purpose of a caveat is to raise " 'the general question [of] devisavit vel non . . . .' " *Smith v. Davis*, 200 Ga. 317, 318 (3) (37 SE2d 182) (1946). Accordingly, as the probate court observed, the precedential value of cases such as *Sutton* has been obviated as a matter of law, because they pre-date the 2002 amendment. Such cases are inapplicable without regard to whether, as a matter of fact, the will in any particular case has or has not been probated at the time of the assertion of a right under OCGA § 53-4-48.

"To state the whole matter in a few words, the issue arising on proceedings to prove a will in solemn form is devisavit vel non, — will or no will." *Sutton v. Hancock*, supra at 441. Since the statutory right under OCGA § 53-4-48 ultimately depends upon the validity of a will which preceded, but did not contemplate a birth, adoption or marriage, there is no rationale for imposing a procedural requirement that the surviving child or spouse assert that right prior to probate, by caveat or otherwise. Although OCGA § 53-4-48 speaks in terms of a limited "revocation" of the will, it is clear that the legislative intent is to create a statutory right in surviving children and spouses. Use of the term "revocation" is not dispositive. "[A] statute is to be read as a whole, and the spirit and intent of the legislation prevails over a literal reading of the language. [Cit.]" *Kemp v. City of Claxton*, 269 Ga. 173, 175 (1) (496 SE2d 712) (1998).

220

> To give effect to the intention of the legislature, courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof. [Cits.] Where the letter of the statute results in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the spirit or reason of the statute.

*New Amsterdam Cas. Co. v. Freeland*, 216 Ga. 491, 495 (117 SE2d 538) (1960). Construing OCGA § 53-4-48 as a whole, the clear and unambiguous intent of the General Assembly is to preserve the validity of a will in circumstances which previously would have resulted in its revocation. Thus, the statute provides that, when a will was executed prior to a marriage, adoption or birth and contained no provision in contemplation thereof, the document will no longer be deemed fully revoked by those events, but will be construed so as to provide that the subsequent spouse or child will receive the same share of the estate he or she would have received had the testator died intestate. Although the General Assembly used the term partial "revocation," the clear legislative intent was to prevent a complete revocation of a will by creating, as a matter of law, an inheritance right in survivors which in no way affects the validity of a will. Therefore, the issue need not be raised prior to probate. " 'The probate of a will is merely conclusive of the factum of the will.' [Cits.]" *Cross v. Stokes*, 275 Ga. 872, 874 (1) (572 SE2d 538) (2002). It is not preclusive of Ms. Ricart's statutory right under OCGA § 53-4-48 as a surviving widow.

There is no reason to avoid addressing the issue which the majority declines to consider in footnote 5. That issue was implicitly addressed and, in my opinion, properly resolved by the probate court. The construction of OCGA § 53-4-48, as amended in 2002, is a matter of first impression. Thus, for the benefit of the bench and bar, this Court should hold that the probate court correctly interpreted the statute and held that Ms. Ricart retained her right, as a matter of law, to an intestate share of her husband's estate without regard to whether his will had yet been probated.

I am authorized to state that Justice Thompson joins in this special concurrence.

DECIDED FEBRUARY 13, 2006.

*Rogers & Watkins, Marjorie M. Rogers*, for appellant.

*Smith, White, Sharma & Halpern, Larry J. White, Marston C. Brown, Virginia S. Harkins*, for appellee.