**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 5, 2025**

# In the Court of Appeals of Georgia

A25A0310. IN RE: ESTATE OF RANDOLPH BENEDICT CURVAN, DECEASED.

HODGES, Judge.

In the second appearance of this case in this Court, Sharon Lavant appeals pro se an order of the Probate Court of Henry County admitting Randolph Benedict Curvan's July 31, 2019 will to probate in solemn form. In the order under appeal, the probate court noted that it conducted a bench trial on November 7, 2023. However, no transcript is included in the record on appeal, and Lavant's notice of appeal states that, "[b]ecause there are no transcripts of the proceedings in the trial court, none will be filed for inclusion in the record on appeal." The lack of a transcript substantially limits our appellate review and, therefore, we affirm for the following reasons.

Generally, "[w]hen a probate court's findings in a nonjury trial are supported by any evidence, they must be affirmed on appeal." *O'Callaghan v. Samples*, 354 Ga. App. 42 (1) (840 SE2d 139) (2020). So viewed, the record, such as it is, demonstrates that Randolph Benedict Curvan ("Curvan") died testate on February 27, 2020. At the time of his death, Curvan was married to, but separated from, Cheryl Martina Curvan; had two adult children, Charmaine Curvan-Lawes and Randolph Andrew Curvan; and was living with Lavant.[1] See *In re Estate of Curvan*, 362 Ga. App. 665, n. 1 (870 SE2d 1) (2022) ("*Curvan I*"). In *Curvan I*, we determined that

> in May 2020, [Lavant] filed a petition to probate the [July 31, 2019] Will in solemn form. The Will referenced a trust instrument known as The Randolph Benedict Curvan Living Trust (the "Trust") and provided that the executor of the Will "shall be the then-acting [t]rustee or [t]rustees" of the Trust. The Will also provided that, after the payment of estate expenses, the remainder of the estate would be given to the trustee to be added to the principal of the Trust and to be held, administered, and distributed under the terms of the Trust. According to Caveators, [Lavant] was the trustee of the Trust, which provided that [Lavant] would receive the entire estate of Randolph Benedict Curvan ("Decedent").

---

[1] Together, these relatives eventually filed a caveat to Lavant's original petition to probate Curvan's July 31, 2019 will in solemn form (the "Caveators").

Caveators filed a caveat to the petition and asserted, inter alia, that the Will was not the valid last will of Decedent, that the signatures on the Will were not Decedent's, and that [Lavant] was not fit to serve as executor. Although Caveators stated that a previous will was the true last will of Decedent, no such will was attached to their verified caveat.

In July 2020, [Lavant] sought to obtain temporary letters of administration to allow her to collect and preserve Decedent's assets. The probate court instead appointed an independent temporary administrator for the sole purpose of collecting and preserving Decedent's assets until a permanent personal representative was appointed.

[Lavant] subsequently filed a motion for summary judgment based on her May 2020 petition to probate the Will. In her motion, [Lavant] sought a ruling that the Will was Decedent's last true will and recognition that she was Decedent's spouse. Caveators opposed the motion on all grounds.

After filing her motion for summary judgment, [Lavant] filed a petition to probate a different Last Will and Testament of Randolph B. Curvan dated January 5, 2019. The January 2019 [W]ill provided that, after the payment of all expenses, the remainder of Decedent's estate would be held in trust for [Lavant] for her lifetime, that [Lavant] would be the sole trustee of the Trust, and that payments would be made to [Lavant] at her discretion. In addition, on [Lavant]'s death, the remainder of Decedent's

estate would be distributed to his children, Charmaine Curvan-Lawes and Randolph A. Curvan. In her petition to probate this will, [Lavant] acknowledged that another purported will of Decedent was pending in the same court. Caveators also filed a caveat to that petition.

Without addressing the petition to probate the January 2019 [W]ill, the probate court granted [Lavant]'s motion for summary judgment as to the validity of the Will and admitted it as proven in solemn form. The probate court denied [Lavant]'s motion to the extent she sought recognition as Decedent's spouse. In addition, the court concluded that [Lavant] could not serve as executor because of a conflict of interest and appointed the independent temporary administrator as executor of the estate.

(Footnotes omitted.) Id. at 666-667. We reversed, concluding that Lavant's competing petitions to probate two different wills "created a factual question that must be resolved by the factfinder." Id. at 667.

On remand, the Caveators filed a motion for summary judgment in June 2022, asserting that Curvan's July 31, 2019 will was void because Lavant executed the will as both a beneficiary and a witness. The probate court concluded that "an issue of fact remains regarding whether the will dated July 31, 2019 is the will of the Decedent" and denied the Caveators' summary judgment motion in February 2023.

Based upon the evidence adduced at the ensuing bench trial in November 2023, the probate court entered a June 2024 order that concluded Curvan's July 31, 2019 will was valid and admitted it to probate in solemn form, but further concluded that Lavant had a conflict of interest and could not serve as the estate's personal representative. As a result, the court appointed an independent administrator for the estate. This appeal followed.

1. At the outset, we note that Lavant's appellant's brief does not contain an enumeration of errors. See OCGA § 5-6-40 ("The appellant . . . shall file with the clerk of the appellate court . . . an enumeration of the errors which shall set out separately each error relied upon. The enumeration shall be concise and need not set out or refer to portions of the record on appeal. . . . The appellate court, by rule, may permit the enumeration to be made a part of the brief."); Court of Appeals Rule 25 (a) (4) ("At a minimum, the appellant's brief must include . . . [t]he enumeration of errors, which must identify separately and concisely each allegedly erroneous ruling the appellant relies on as a basis for reversal of the judgment on appeal. See OCGA § 5-6-40.").

> [P]roceeding pro se does not relieve [Lavant] of [her] obligation to comply with the rules of this [C]ourt. Our requirements as to the form

5

of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this [C]ourt.

(Citation and punctuation omitted.) *Newsome v. Graham*, 365 Ga. App. 202, 202-203 (2) (877 SE2d 371) (2022). And while the lack of an enumeration of errors may not necessarily result in the dismissal of Lavant's appeal,[2] it needlessly hinders our review. See *Clark v. Rau*, 338 Ga. App. 251, 253 (1) (789 SE2d 399) (2016) (physical precedent only). "Nevertheless, we will address [Lavant's] arguments, insofar as we are able to ascertain them from her brief." (Citation and punctuation omitted.) *Morman-Johnson v. Hathaway*, 312 Ga. App. 300, 301 (718 SE2d 132) (2011); see also *In the Interest of M. R. S.*, Case No. S25G0338, 2025 Ga. LEXIS 92, at *2 (Ga., May 6, 2025); but see *Clark*, 338 Ga. App. at 254 (1) ("Creating an appeal for the appellant who has failed to file enumerations of error . . . casts this [C]ourt into the role of advocate. The awkwardness and inappropriateness of this role has been suggested [in prior criminal cases]. To take on the role of appellate advocate in the context of a *civil* appeal is even

---

[2] See generally OCGA § 5-6-48 (b) (identifying classes of appeals that may be dismissed); *Advantage Behavioral Health Systems v. Cleveland*, 350 Ga. App. 511, 514-517 (1) (829 SE2d 763) (2019).

more inappropriate and awkward. And in discerning that which appears nowhere in an appellant's pleadings or the record, we are not only assuming the role of advocate; we are conflating that role with our judicial responsibilities so as to be both advocate and arbiter.") (citations and punctuation omitted; emphasis in original).

2. As a threshold matter, the record reveals that *Lavant* filed the petition to probate Curvan's July 31, 2019 will in solemn form. *Curvan I*, 362 Ga. App. at 665-666. The probate court admitted that will to probate, thus granting Lavant the relief she requested. However, Lavant's entire appeal now contends the probate court erred in giving her what she sought. "One assuming a position in court and having that position sustained by the court can not thereafter assume a contrary position." *Printup v. Smith*, 212 Ga. 501, 502 (93 SE2d 679) (1956). Moreover,

> [w]e think the serious business of the court would justify it in refusing to allow one to "blow hot and then cold," thereby wasting its time. . . . Having voluntarily prayed for precisely the judgment granted [Lavant], it would be trifling with the law to allow [her] to secure a reversal of the judgment sought with full knowledge of all relevant facts.

Id. As a result, Lavant cannot now be heard to complain of the probate court's errors in awarding her exactly the relief she sought.

3. Nevertheless, Lavant argues that the probate court erred in revoking the January 5, 2019 will and admitting to probate instead the July 31, 2019 will. We do not reach Lavant's argument.

Under Georgia law,

> [t]he *sole question* in a proceeding to probate a will in solemn form is whether the paper propounded is, or is not, the last will and testament of the deceased. The result turns on three issues: (1) whether the document was properly executed; (2) whether the testator had the mental capacity to execute a will; and (3) whether the document was the result of undue influence, fraud, duress, or mistake.

(Citation omitted; emphasis supplied.) *Wilbur v. Floyd*, 353 Ga. App. 864, 867 (1) (839 SE2d 675) (2020). As these issues represent factual matters, "[i]t is clear . . . that the error [Lavant] urges requires a consideration of the evidence." *Gillespie v. Gillespie*, 259 Ga. 838 (388 SE2d 688) (1990). However, as we have noted, there is no transcript of the bench trial in the record on appeal.

> An appellant who alleges error in the trial proceedings has the burden of producing a transcript of the allegedly erroneous matter. Without access to the transcript of the hearing or a statutorily authorized substitute, we must presume that the probate court's ruling was correct and reject [Lavant's] claim of error.

(Citations and punctuation omitted.) *In re Estate of Coutermarsh*, 325 Ga. App. 288, 291 (2) (752 SE2d 448) (2013); see also *Gillespie*, 259 Ga. at 838 ("Without a transcript of the evidence presented, we will in keeping with very old authority in this state presume in favor of public officers, in the absence of all proof to the contrary, that they discharged their duty in compliance with the law.") (citation and punctuation omitted); *Finch v. Brown*, 216 Ga. App. 451, 453 (5) (454 SE2d 807) (1995) ("To the extent we can ascertain the grounds for [Lavant's] remaining enumerations, we are compelled to presume that the trial judge correctly ruled on the issues presented since there is no transcript of the proceedings below. ").[3]

4. Lavant also contends that the probate court "erred by not acknowledging the conflict of interest in the July 31, 2019 will," caused by her dual role as both a beneficiary of the will and a witness to its execution. In a related argument, Lavant asserts that the probate court failed to address the intestacy resulting from her

---

[3] Even so, Lavant has cited no authority in support of this argument. See Court of Appeals Rules 25 (a) (7) ("At a minimum, the appellant's brief must include . . . [t]he argument, which must cite the authorities relied on. . . ."); 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

signature as both a beneficiary and a witness. These arguments present nothing for our review.

Once again, "[t]he *sole question* in a proceeding to probate a will in solemn form is whether the paper propounded is, or is not, the last will and testament of the deceased." (Citation omitted; emphasis supplied.) *Wilbur*, 353 Ga. App. at 867 (1). Accordingly,

> [w]here a will was properly executed by a person having testamentary capacity, the court should order it to probate and record, leaving all questions of construction and the fate of particular bequests for action of the parties or future direction in the proper court. . . . The construction of an item of the will and the question of the validity thereof is for some other forum. The probate of a will is merely conclusive of the factum of the will.

(Citation and punctuation omitted.) *Cross v. Stokes*, 275 Ga. 872, 874 (1) (572 SE2d 538) (2002). Consistent with that authority, the probate court did not render a decision concerning the *effect* of Curvan's July 31, 2019 will — *only* that the document was, in fact, Curvan's lawful last will and testament. Contrary to Lavant's argument, the probate court did recognize her conflict of interest — it simply did not issue a ruling on the effect of the conflict on Curvan's will, aside from appointing a personal

representative to resolve the conflict. In essence, then, Lavant asks us to issue an advisory opinion on an effectual question the probate court did not address. See generally *Smith v. Billings*, 132 Ga. App. 201, 204 (4) (207 SE2d 683) (1974) (holding, in trespass action, that "[a]ny ruling at this time would be obviously premature and would constitute an advisory opinion" where admissibility of evidence at trial had yet to be decided). Therefore, Lavant's argument presents nothing for our review.

5. Lavant also contends that the probate court erred in finding that she had a conflict of interest that precluded her from serving as the administrator of Curvan's estate and in appointing an independent estate administrator. In support of her argument, Lavant cites, OCGA § 53-6-10 (b), which provides that "[u]nless *adjudged unfit*, nominated executors shall have the right to qualify in the order set out in the will." (Emphasis supplied.) On that point, Lavant alleges that she was not proven unfit.[4] However, for the reasons stated in Divisions 3 and 4, supra, we do not reach Lavant's argument. See *In re Estate of Coutermarsh*, 325 Ga. App. at 291 (2).

---

[4] The probate court concluded that Lavant had a "personal interest in determining that the largest portion [of Curvan's estate] possible be transferred to the Trust of which she is Trustee[,]" although any facts developed to support the court's conclusion — which would have been memorialized in a transcript — are not before us.

6. Finally, Lavant asks this Court to sanction the attorney who assisted Curvan with the execution of his July 31, 2019 will due to "ethical lapses," as well as award her attorney fees against the Caveators and their counsel pursuant to OCGA § 9-15-14 (a) for pursuing baseless claims that lacked substantial evidence. We decline Lavant's invitations for the following reasons.

(a) *Rules of Professional Conduct*. Given the absence of a transcript, much less a ruling on the effect of Curvan's July 31, 2019 will, we can make no determination whether the attorney who assisted Curvan with the execution of his will violated any rule of professional conduct. See generally *In re Estate of Coutermarsh*, 325 Ga. App. at 291 (2); *Smith*, 132 Ga. App. at 204 (4).

(b) *OCGA § 9-15-14 Attorney Fees*. OCGA § 9-15-14 (a) provides:

> In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.

By its express terms, then, OCGA § 9-15-14 applies only to courts of record. This Court is not a court of record. See *Style Craft Homes v. Chapman*, 226 Ga. App. 634, 635 (487 SE2d 32) (1997). Therefore, we lack the power, had we any inclination formed by a review of a transcript, to impose an award of attorney fees against the Caveators and their counsel under OCGA § 9-15-14.

In sum, notwithstanding her receipt of the relief she initially requested, Lavant's failure to obtain a transcript of the probate court's bench trial precludes our review of several of her apparent arguments. Moreover, Lavant also seeks a decision from this Court on other issues which would be both advisory and premature. Finally, Lavant has also failed largely to support her arguments with citations of authority in violation of our Rules. Therefore, we affirm the probate court's order admitting Curvan's July 31, 2019 will to probate in solemn form.

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*