**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 11, 2016**

# In the Court of Appeals of Georgia

A16A0877. MARLOW v. THE STATE.                                DO-032

A16A0878. TRIM v. THE STATE.                                  DO-033

DOYLE, Chief Judge.

Following a joint trial, Kelly Marlow and Robert Trim (collectively, "the appellants") were each convicted of two felony counts of making a false statement.[1] In separate appeals, the appellants challenge the denial of their subsequent motions for new trial. They assert identical enumerations of error: (1) the evidence was insufficient to support their convictions; (2) the rule of lenity should have been applied to their convictions; (3) the trial court erred in charging the jury; and (4) the trial court should have recused sua sponte. We consolidate these appeals for

---

[1] OCGA § 16-10-20.

disposition in a single opinion, and for the reasons that follow, we affirm the appellants' convictions, but vacate their sentences and remand for resentencing.

Viewed in the light most favorable to the verdict,[2] the record shows that on June 13, 2013, at approximately 11:00 p.m., a Canton police officer responded to a 911 call made by Barbara Knowles outside the Painted Pig restaurant in Canton.[3] When he arrived, the officer spoke with Knowles, Marlow, and Trim, and they advised that

> they had left a school board meeting that was very heated[,] and when they crossed the [two-lane, one way] street . . . between the crosswalk and the actual entrance of the restaurant, . . . [Cherokee County Schools Superintendent Frank] Petruzielo . . . came speeding by in an aggressive manner[,] and he came very close to them[,] and they felt threatened.[4]

---

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[3] Knowles was charged with and convicted of four felony counts of making a false statement and one misdemeanor count of making a false crime report. She was tried jointly with Marlow and Trim, but Knowles is not a party to this appeal.

[4] According to the responding officer, Knowles did most of the speaking that evening. Marlow spoke as well, "but not as assertively," and Trim "spoke, . . [but not] a whole lot."

2

The officer took a report, but he advised the trio that he would not pursue an investigation or charges and that they could obtain a citizen warrant in magistrate court if they wished to further pursue the matter.

A police supervisor subsequently reviewed the incident report, and on June 14, 2013, he referred the matter to a detective for investigation. The detective contacted Knowles, Trim, and Marlow and asked them to provide written statements via email. On June 19, 2013, Trim emailed his written statement to the detective, and he went into the police station and signed it on July 1, 2013. In the statement, Trim advised that he, Knowles, and Marlow were crossing the street, and as they reached the center line of the road, a white BMW "began to accelerate and then switched from the right lane to the left lane, where we were approximately halfway across." According to his statement, Knowles "moved out of the way quickly[,] and [Trim] pushed . . . Marlow out of the lane to avoid being hit by the car. The car passed, and [he] could feel the closeness of the car. . . . It was incredibly close, and [Trim] barely got out of the way." Trim stated that the BMW was very similar to that driven by Petruzielo, who had attended the school board meeting earlier that night and "was clearly angry and frustrated and directed much of that publicly at . . . [Marlow]."

3

Marlow also sent the detective a written statement via email, which statement she later signed on July 1, 2013. Marlow stated therein that on June 13, 2013, as she, Knowles, and Trim reached the center lane of the two-lane, one-way road in front of the restaurant, a white BMW SUV "abruptly changed lanes and accelerated in [their] direction." "Trim . . . noticed the vehicle approaching [them] and felt it was necessary to push [Marlow] from behind onto the sidewalk to ensure [her] safety. . . . [Marlow] recognized the SUV as the vehicle that the school superintendent parks in his space at the school district offices almost every day."

On June 20, 2013, the detective obtained surveillance video from outside the Painted Pig at 10:40 p.m. on June 13, 2013.[5] According to the detective, the video shows Knowles "casually" walk across the street to the sidewalk without turning around and walk into the restaurant. Trim then reaches the sidewalk, followed by Marlow. The video does not show Trim pushing Marlow out of the way in the way they both described in their statements. It does depict Petruzielo driving past in his

---

[5] The surveillance video was played for the jury at trial.

4

vehicle.[6] The detective described the surveillance video as "inconsistent" with the accusations made by the appellants and Knowles.

On July 2, 2013, Knowles and the appellants met with police at the scene, and they gave recorded oral statements and re-enacted their version of the events involving Petruzielo, narrating as they did so.[7] Their statements essentially repeated their written statements, and according to the detective, their statements and re-enactment remained inconsistent with the video surveillance.

As a result of the investigation, Marlow was charged with two felony counts of making a false statement, one on July 1, 2013 (Count 8) and another on July 2, 2013 (Count 9). Trim also was charged with two felony counts of making a false statement, one on July 1, 2013 (Count 11) and another on July 2, 2013 (Count 12). They were each convicted of both counts and sentenced to serve 10 years, with 60

---

[6] At trial, the State introduced the testimony of a police officer, who worked in the intelligence division of the police department and analyzed the surveillance video. Based on his analysis of the frames in the video, the officer opined that Petruzielo was traveling approximately 11.4 miles an hour as he drove past the scene. A defense expert refuted this conclusion, testifying that Petruzielo was traveling between 21 and 24.5 miles per hour.

[7] The statements and re-enactment were recorded and played at trial.

days in confinement and the remainder on probation. The trial court denied their subsequent motions for new trial, and these appeals followed.

1. The appellants contend that the evidence was insufficient to support their convictions. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[8] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[9]

The relevant portions of OCGA § 16-10-20 provide as follows:

A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of

---

[8] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[9] (Punctuation omitted.) *McClendon v. State*, 287 Ga. App. 238, 239 (1) (651 SE2d 165) (2007).

6

any department or agency of state government or of the government of any county, city, or other political subdivision of this [S]tate shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

Here, the jury viewed the video surveillance footage and read and heard the testimony regarding the appellants' statements to police. The fact that witnesses conceded on cross-examination that the appellants' statements "could have been the product of an innocent lapse in memory, since the[] statements were not given until days or weeks after the incident[,] and [the appellants] made these statements from a 'cold' memory [without reviewing the video surveillance footage]" is unavailing.

It is the province of the jury to resolve any conflicts in the evidence and to determine the credibility of witnesses, and the fact that such conflicts may be resolved adversely to the [appellants] does not render the evidence insufficient. The evidence was sufficient to authorize the jury to determine that the State excluded all reasonable hypotheses save that of [the appellants'] guilt, and to authorize a rational trier of fact to find [Trim and Marlow] guilty beyond a reasonable doubt of the crimes for which [they were] convicted.[10]

_____

[10] (Citations omitted.) *Banta v. State*, 282 Ga. 392, 395-396 (1) (651 SE2d 21) (2007).

7

2. Citing the rule of lenity, the appellants contend that their felony convictions for making false statements should be vacated and that they should be resentenced for misdemeanor making a false report of a crime. We agree.

As this Court recently explained in *Gordon v. State*,[11] a whole-court case decided after the trial court denied the appellants' motions for new trial,[12]

> the rule of lenity finds its roots in the vagueness doctrine, which requires fair warning as to what conduct is proscribed. The rule of lenity, more specifically, ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment. But if after applying the traditional canons of statutory construction the relevant text remains

---

[11] 334 Ga. App. 633 (780 SE2d 376) (2015) (whole court).

[12] The State does not challenge the applicability of the *Gordon* decision to this case. Nevertheless, we note that "[i]n order to ensure that similarly situated defendants are treated similarly and to maintain the integrity of the judicial process while still providing finality, [the Supreme Court of Georgia] deem[s] it appropriate to adopt the 'pipeline approach, that is, that a new rule of criminal procedure . . . will be applied to all cases then on direct review or not yet final. . . . Application of the new rule to a pending case will, of course, depend on the preservation of the issue for appellate review. . . ." *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992). (citation omitted). Here, the appellants generally challenged the legality of their sentences in their respective motions for new trial. And "a sentence that is void for any reason is a mere nullity and may be vacated at any time in any court where it becomes material to the interest of the parties to consider it." *Mosley v. State*, 301 Ga. App. 47, 48 (686 SE2d 833) (2009) (punctuation omitted).

unambiguous, the rule of lenity will not apply. The fundamental inquiry when making this assessment, then, is *whether the identical conduct would support a conviction under either of two crimes with differing penalties*, i.e., whether the statutes define the same offense such that an ambiguity is created by different punishments being set forth for the same crime.

In explaining the appropriate analysis to apply in making this assessment, however, the Supreme Court of Georgia has cautioned that simply because a single act may, as a factual matter, violate more than one penal statute does not implicate the rule of lenity. By way of example, . . . depending upon attendant circumstances, it is possible for the act of striking another person with an object to meet the definitions of each of the crimes of: simple battery, OCGA § 16-5-23, a misdemeanor; aggravated battery, OCGA § 16-5-24, a felony; simple assault, OCGA § 16-5-20, a misdemeanor; aggravated assault, OCGA § 16-5-21, a felony; and malice murder, OCGA § 16-5-1, a felony. In the foregoing circumstance, a defendant could be prosecuted for multiple crimes. But when a defendant is prosecuted for and [found guilty] of multiple crimes based upon a single act, the injustice that must be avoided is *sentencing* the defendant for more than one crime following [a guilty verdict for] multiple crimes based upon the same act.[13]

---

[13] (Punctuation and footnotes omitted; emphasis in original and supplied.) *Gordon*, 334 Ga. App. at 65-66 (1), citing *United States v. Lanier*, 520 U. S. 259, 266 (II) (117 SCt 1219, 137 LE2d 432) (1997) ("[A]s a sort of 'junior version of the vagueness doctrine,' . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to

9

Thus, the rule of lenity applies where there is ambiguity in the two statutes such that "'both crimes could be proved with the same evidence.'"[14]

Here, the appellants were charged with the felony offense of making a false statement, which is committed when a person

> knowingly and willfully falsifies . . . a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this [S]tate.[15]

The appellants argue that the rule of lenity required that they be sentenced for committing the misdemeanor offense of making a false report of a crime, which is committed when a person "willfully and knowingly gives or causes a false report of a crime to be given to any law enforcement officer or agency of this [S]tate. . . ."[16]

---

apply it only to conduct clearly covered.") (citation omitted). See also *McNair v. State*, 293 Ga. 282, 283 (745 SE2d 646) (2013); *Banta v. State*, 281 Ga. 615, 617-618 (2) (642 SE2d 51) (2007).

[14] *Gordon*, 334 Ga. App. at 66 (1).

[15] OCGA § 16-10-20.

[16] OCGA § 16-10-26.

In Counts 8 and 11, the indictment charged the appellants with committing the felony offense of making a false statement in the following ways.

Count 8

And the grand jurors . . . further charge and accuse . . . Marlow with the offense of MAKING A FALSE STATEMENT (OCGA § 6-10-20) for that . . [Marlow], on the 1st day of July, 2013, . . did . . . knowingly and wilfully provide a false written statement to Detective Andrew Henson in a matter within the jurisdiction of the Canton Police Department . . ., to wit: . . . Marlow stated that when . . . [she], . . . Trim, . . . and Knowles were crossing Main Street on the evening of June 13, 2013, a white BMW vehicle that . . . Marlow saw daily in the parking spot of . . . Petruzielo accelerated and abruptly changed lanes, driving towards . . . Marlow, . . . Trim[,] and . . . Knowles; and . . . Trim pushed . . . Marlow out of the way of said vehicle to prevent . . . Marlow from being struck by said vehicle; and . . . Marlow stated that there were several witnesses at the entrance of the restaurant who inquired whether . . . Marlow, . . . Knowles[,] and . . . Trim knew the driver of said vehicle. . . .

Count 11

And the grand jurors . . . further charge and accuse . . . Trim with the offense of MAKING A FALSE STATEMENT (OCGA § 6-10-20) for that . . [Trim], on the 1st day of July, 2013, . . did . . . knowingly and willfully provide a false written statement to Detective Andrew Henson in a matter within the jurisdiction of the Canton Police Department . . ., to wit: . . . Trim stated that when . . . [Trim], . . . Knowles, . . . and

11

Marlow were crossing Main Street on the evening of June 13, 2013, a white BMW vehicle similar to the vehicle owned by Frank Petruzielo, accelerated and changed lanes driving towards . . . Trim as . . . Trim crossed the center of Main Street; and stated that . . . Trim physically moved . . . Marlow to prevent . . . Marlow from being struck by said vehicle; and . . . Trim stated that . . . Trim was barely able to get out of the way of said vehicle; and . . . Trim stated that there were approximately four to six people on the sidewalk outside of the Painted Pig restaurant who witnessed the said events and commented on the actions of the individual driving said vehicle. . . .

In Counts 9 and 12, the indictment charged the appellants as follows:

Count 9

And the grand jurors . . . further charge and accuse . . . Marlow with the offense of MAKING A FALSE STATEMENT (OCGA § 6-10-20) for that . . [Marlow], on the 2nd day of July, 2013, . . . did . . . knowingly and willingly make a false statement to Detective Andrew Henson in a matter within the department of the Canton Police Department . . . , to wit: . . . Marlow stated that when [she], . . . Trim[,] and . . . Knowles were crossing Main Street on the evening of June 13, 2013; a vehicle being driven by Frank Petruzielo accelerated towards . . . Marlow[,] . . . . Trim[,] and . . . Knowles; and . . . Marlow stated that . . . Trim physically moved . . . Marlow to prevent . . . Marlow from being struck by said vehicle; and . . . Marlow stated that . . . Marlow stopped and paused when . . . Marlow reached the sidewalk; and . . . Marlow stated

12

that there were witnesses on the sidewalk who observed the actions of . . . Petruzielo. . . .

Count 12

And the grand jurors . . . further charge and accuse . . . Trim with the offense of MAKING A FALSE STATEMENT (OCGA § 6-10-20) for that . . [Trim], on the 2nd day of July, 2013, . . . did . . . knowingly and willingly make a false statement to Detective Andrew Henson in a matter within the department of the Canton Police Department . . . , to wit: . . . Trim stated that when . . . Trim was crossing Main Street on the evening of June 13, 2013, a vehicle being driven by Frank Petruzielo accelerated toward . . . Trim, . . . Knowles[,] and Marlow; and . . . Trim stated that . . . Trim physically moved . . . Marlow to prevent . . . Marlow from being struck by said vehicle; and . . . Trim stated that . . . Trim, . . . Marlow[,] and . . . Knowles then stopped on the sidewalk to discuss the actions of . . . Petruzielo; and . . . Trim stated that there were multiple witnesses on the sidewalk who observed the actions of . . . Petruzielo. . . .

Upon review of the two statutes at issue, although there are many ways that the crime of making a false statement may be committed, [the appellants'] conduct, as charged, subjected [them] to prosecution and sentencing under both OCGA §§ 16-10-20 and 16-10-26. Indeed, [the appellants] wilfully and knowingly made . . . false statements to [a law enforcement officer] by falsely reporting to [that] officer[] a crime that [they] alleged to have occurred in their jurisdiction. Thus, because these

13

two statutes provide different grades of punishment for the same criminal conduct, [the appellants are] entitled to the rule of lenity.[17]

Accordingly, we vacate the appellants' sentences for the felony offense of making a false statement and remand for resentencing for the misdemeanor offense of making a false report of a crime, OCGA § 16-10-24.[18]

3. The appellants argue that the trial court erred by failing to give two requested charges. We find no basis for reversal.

(a) The appellants contend that the trial court erred by denying their requests to instruct the jury on the affirmative defense of mistake of fact. At trial, the appellants argued that their statements to police were either true or, if false, were a result of faulty memory or mistake of fact. They requested a jury charge on mistake of fact, and the trial court refused to give such a charge.

Under OCGA § 16-3-5, "[a] person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of

---

[17] *Gordon*, 334 Ga. App. at 640-641. We reject the State's contention on appeal that a conviction for making a false crime report requires that the defendant initiate contact with the police to make the report. There is no such requirement in OCGA § 16-10-26.

[18] See id. at 641.

14

fact which, if true, would have justified the act or omission." "Generally, however, ignorance or mistake of fact constitutes a defense to a criminal charge only if it is not superinduced by the fault or negligence of the party doing the wrongful act."[19]

Here, the appellants' insistence that their testimony was not false certainly does not support a mistake of fact charge.[20] And if their memory was faulty or they somehow misunderstood the actual events surrounding their crossing of the street and Petruzielo's travel in his car at that time, such mistakes were superinduced by their own fault or negligence. Thus, "[the] evidence does not raise a mistake of fact defense."[21]

> Further, a conviction generally should not be reversed in any case, however, where the charge of the court fully and adequately covers the requisite elements of the crime charged, the requirement of criminal intent to commit the crime charged, and other material defenses thereto, and where a reasonable trier of fact could find from the evidence proof of guilt beyond a reasonable doubt. This is so because where the jury

---

[19] (Punctuation omitted.) *Hines v. State*, 276 Ga. 491, 495 (5) (578 SE2d 868) (2003), quoting *Crawford v. State*, 267 Ga. 543, 544 (480 SE2d 573) (1997).

[20] See *Williams v. State*, 221 Ga. App. 296, 297 (1) (471 SE2d 258) (1996) ("One cannot deny committing an act, while at the same time argue he committed the act by mistake.").

[21] *Hall v. State*, 258 Ga. App. 156, 157-158 (1) (573 SE2d 415) (2002). See also *Castaneira v. State*, 321 Ga. App. 418, 422 (1) (740 SE2d 400) (2013).

has heard the defense and has been properly charged as to the [S]tate's burden of proof, the elements of the crime and the requirement of criminal intent, and as to material defenses, a finding of guilt necessarily finds the requisite criminal intent and therefore negates any possibility that the jury, had it been charged mistake of fact, would have acquitted.[22]

Here,

the transcript . . . shows that the trial court's charge fully informed the jury on the charge . . . , the presumption of innocence, the State's burden to prove [the appellants'] guilt beyond a reasonable doubt, credibility of witnesses, impeachment, [and] criminal intent. . . . Nevertheless, the jury found [Marlow and Trim] guilty. Therefore, based on the evidence of record and the charge given, we find that, even if a charge of mistake of fact had been required, any error in failing to give the charge was harmless.[23]

(b) The appellants also argue that the trial court erred by denying their request to charge the jury on the lesser-included misdemeanor offense of obstruction. Given our holding in Division 2 reversing the appellants' felony convictions for making a

---

[22] (Citations and punctuation omitted.) *Hall*, 258 Ga. App. at 158 (2). See also *Castaneira*, 321 Ga. App. at 418, 422-423 (1).

[23] (Punctuation omitted.) *Hall*, 258 Ga. App. at 158 (2).

16

false statement, this argument – that obstruction is a lesser-included offense of making a false statement – is moot.

4. Finally, the appellants contend that the trial court erred by failing to recuse. We disagree.

Several months after the trial, the appellants filed motions to recuse the trial judge, supported by the affidavits of trial counsel alleging that (a) the trial court failed to disclose that she "is purported to be a member of the Board of Trustees for Reinhardt University," and "Petruzielo is also purported to be an officer at Reinhardt University; and (b) Reinhardt University had "a partnership agreement" with the Cherokee County Board of Education, for which Petruzielo served as superintendent. The appellants argued that the trial judge should have recused sua sponte, and that her failure to do so required that their convictions be vacated. The trial court[24] denied the motions.[25]

_____

[24] The trial judge denied the initial motions, finding them substantively meritless and untimely. The appellants filed supplements to their motions to recuse, and the motions were referred to another trial judge, who also denied them, finding that neither disclosure of the information nor recusal was required.

[25] The court found that the trial judge had served on the Board of Trustees for Reinhardt College since 2012, and Petruzielo "serves as an Ambassador for the College and attends a yearly partnership meeting between the Cherokee County School District and Reinhardt College leadership."

"There is no duty for a trial judge to sua sponte recuse [her]self absent a violation of a specific standard of OCGA § 15-1-8[26] or Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct."[27] Here, the appellants claim that the trial court should have recused herself pursuant to Canon 3 (E) (1), which provides in relevant part that a judge should disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned, including . . . instances [in which] . . . the judge has a personal bias or prejudice concerning a party. . . ."

> In construing Canon 3, this Court has interpreted the phrase "impartiality might reasonably be questioned" as meaning the existence of a reasonable perception of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates.[28]

---

[26] "'OCGA § 15-1-8 pertinently provides that a judge shall not sit in any case in which [s]he has a pecuniary interest, a familial relationship with a party, or in any case in which [s]he previously served as counsel or judge.'"*Baptiste v. State*, 229 Ga. App. 691, 687 (1) (494 SE2d 530) (1997).

[27] *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008).

[28] (Punctuation omitted.) Id., quoting *Baptiste v. State*, 229 Ga. App. 691, 694 (1) (494 SE2d 530) (1997).

18

On appeal, "a trial judge's failure to sua sponte recuse [herself] will be reversed only [if] the conduct or remark of the judge constitutes an egregious violation of a specific ethical standard, and it must support the inescapable conclusion that a reasonable person would consider the judge to harbor a bias that affects [her] ability to be impartial."[29] To warrant recusal, the alleged bias must be

> of such a nature and intensity to prevent the complaining party from obtaining a trial uninfluenced by the court's prejudgment. To warrant disqualification of a trial judge the affidavit supporting the recusal motion must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.[30]

Here, the basis for the recusal motion is the trial judge's alleged extra-judicial professional contact and involvement with Petruzielo through her position at a local college. The appellants, however, cite to no evidence that the two had any actual contact or involvement, much less of the extent of such a relationship.[31] Similarly, the

---

[29] (Citation omitted.) *Robinson v. State*, 312 Ga. App. 736, 753 (7) (719 SE2d 601) (2011), quoting *Lemming*, 292 Ga. App. at 141 (1).

[30] (Punctuation omitted.) *In re Estate of Robertson*, 271 Ga. App. 785, 790 (611 SE2d 680) (2005).

[31] We note that "[i]t is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record. . . .

appellants cite to no evidence regarding actual involvement between the trial court and the school board.

> The focus here is not on bias in fact but whether the judge's impartiality might reasonably be questioned, keeping in mind the reality that any judge will have come to the bench after having had extensive contacts with the community and the legal profession. Any analysis of the necessity for recusal is necessarily fact-bound, requiring an examination of the nature and extent of any business, personal, social or political associations, and an exercise of judgment concerning just how close and how extensive (and how recent) these associations are or have been.[32]

---

[I]t is not the function of this [C]ourt to cull the record on behalf of a party in search of instances of error." *Walker v. State*, 296 Ga. App. 531, 537 (2) (b) (675 SE2d 270) (2009) (footnote and punctuation omitted).

[32] (Punctuation omitted.) *Sears v. State*, 262 Ga. 805, 806 (1) (b) (426 SE2d 553) (1993), overruled on other grounds by *Brogdon v. State*, 287 Ga. 528, 531 (697 SE2d 211) (2010).

The allegations in this case simply are "not enough reasonably to call into question the trial judge's impartiality in this case."[33] Accordingly, the trial court did not err by failing to recuse.

*Judgments vacated and cases remanded for resentencing. Andrews, P. J. and Ray, J., concur.*

---

[33] *Sears*, 262 Ga. at 806 (1) (b) (recusal not required even though the victim's attorney husband and the trial court both served in the Air National Guard, the husband appeared before the trial judge as an attorney on a single contested case, and the two had minimal social contact). See also *Turner v. State*, 280 Ga. 174, 175 (626 SE2d 86) (2006) (recusal not required even though the trial judge may have had knowledge of the victim and had professional encounters with the defendant's mother while both worked at the courthouse); *Smith v. State*, 189 Ga. App. 27, 32 (2) (b) (375 SE2d 69) (1988) (affirming denial of recusal motion where the trial judge and the victim had a regular working relationship).