**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 19, 2022**

# In the Court of Appeals of Georgia

A21A1293. HOOPER v. TOWNSEND.

MERCIER, Judge.

In this child custody action, Kristin Jocelyn Hooper ("the mother") appeals pro se from the trial court's modification of custody and child support, and its award of attorney fees to Travis Townsend, Jr. ("the father"). For the following reasons, we affirm.[1]

The evidence shows that the parties, who were never married, share a son who was born in Georgia in November 2013. In 2014, the mother moved to Virginia with

---

[1] The father's motion to dismiss this appeal as untimely is hereby denied. The case was final upon entry of the trial court's order on the father's motion for attorney fees. See *Woodruff v. Choate*, 334 Ga. App. 574, 576 (1) (a) (780 SE2d 25) (2015). The 30th day from the court's order fell on Thanksgiving day, the next day (Friday) was a State holiday, and the following two days were Saturday and Sunday. The mother's notice of appeal filed the following Monday was therefore timely. See OCGA §§ 5-6-38 (a), 1-4-1 (a), and 1-3-1 (d) (3).

the child. The father subsequently filed a petition to legitimate the child, and on September 10, 2015, the trial court entered a final order on legitimation, custody, and child support. The child was declared the legitimate son of the father, and the court ordered that the parties share joint legal custody of the child, with the mother having primary physical custody. The court incorporated a parenting plan that provided the father has the right to communicate with the child by telephone or Skype between 6:00 p.m. and 7:00 p.m. each weekday and between 7:00 p.m. and 8:30 p.m. on weekends, and that on weekdays the call shall be no longer than 15 minutes; the father has the right to visitation with the child on the second and fourth weekends of every month; the parties shall discuss jointly all major and material matters affecting the child's welfare and development, including medical, educational, extracurricular, and religious decisions; and a party changing his or her residence shall notify the other party in writing at least 30 days in advance and shall furnish his or her new address.

On February 12, 2018, the father filed a "Petition for Modification of Custody and Expedited Motion for Contempt" alleging, among other things, that the mother had obtained an ex parte protective order in Virginia to prohibit him from communicating with the child, failed to have the child available for daily video call

2

visits, did not provide him with 30-day notice of her intent to move to New Jersey, and on several occasions falsely asserted that the child was ill and could not travel for visitation with the father. The father requested that he be awarded primary physical custody of the child and that the court appoint a guardian ad litem.

In March 2018, the mother and the child moved from Virginia to New Jersey. In the same month, the father filed an emergency motion for contempt alleging that the mother had not responded to his attempts to contact the child, that he had not been permitted to speak to the child since January 20, 2018, and that the mother failed to bring the child for his parenting time on the weekend of March 9. The trial court entered a consent order on the father's emergency motion that required the mother to bring to the child to Georgia on April 4, 2018, for visitation with the father and to "immediately resume" the father's telephone visits with the child as provided in the parenting plan in the September 2015 order.

Shortly thereafter, the mother filed in Virginia an emergency petition to modify custody, alleging that because she and the minor child moved from Virginia to New Jersey, the original custodial arrangement was no longer in the child's best interests. She asserted that the frequent air travel was irritating to the child's ears and disruptive to his health and well-being. The mother asked the Virginia court to assume

jurisdiction of the custody matter and to modify the custody schedule ordered by the Georgia court in September 2015. She also filed a motion in Georgia seeking to transfer jurisdiction of the action to Virginia pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). See OCGA § 19-9-40 et seq. But after a telephone call with the Virginia court, see OCGA § 19-9-49, the trial court entered an order concluding that because Georgia had exclusive and continuing jurisdiction over the matter, it would retain the custody action. The Virginia court agreed that Georgia "continues to have exclusive continuing jurisdiction" of the custody matter and dismissed the mother's motion to modify custody filed there.

On September 13, 2018, the trial court appointed a guardian ad litem to represent the child's interests. The court also ordered a "Late Case Evaluation" in order for the parties to resolve or narrow their issues prior to trial. However because the parties asserted that the evaluator had a conflict of interest, the evaluation was canceled and not rescheduled.

In January 2020, the trial court held a three-day bench trial on the father's motion to modify custody, and on February 27, 2020, the court issued a final order on the motion. The court found that although both parents were bonded with the child and capable of providing for his needs and care, the mother "engaged in intentional,

4

comprehensive and persistent alienation of the minor child" from the father. The court cited several examples: the mother obtained an ex parte temporary protective order to circumvent the father's parenting time, consistently failed to make the child available to the father by phone or video call, falsely represented that the child had a medical condition or travel/activity restriction to circumvent parenting time by the father, and coached the child to "reframe his interpretation of life events and experiences to reflect negatively upon [the father] and [the father's] family." The court also found that the mother "demonstrated a clear unwillingness to co-parent" with the father, noting that in violation of the September 2015 order, she failed to provide the father with written notice of her move from Virginia to New Jersey, and she enrolled the child in a new school and psychotherapy without consulting the father. The court found further that the father was compliant with prior court orders and demonstrated a willingness to co-parent with the mother "despite barriers and challenges presented by [the mother]," and that the guardian ad litem's analysis and recommendation to give the father primary physical custody were "founded and appropriate." The court granted the father's request for primary physical custody of the child concluding that the evidence showed a "material change of conditions and

circumstances." However, the court reserved ruling on the father's request for attorney fees.

Following a hearing, on October 27, 2020, the trial court entered an order granting the father's motion for attorney fees under OCGA § 19-9-3 and awarding him $30,108 to be paid in installments.[2] This appeal followed.

1. The mother asserts that the trial judge erred in declining to recuse herself from the case. However, the mother did not move to recuse the judge, and she appears to argue that the judge should have sua sponte recused for "violat[ing] the three degrees of separation requirement" of the Georgia Code of Judicial Conduct Rule 2.11 (A). Specifically, the mother argues that the father's brother was a staff attorney for another judge on the court; the father (who is an attorney), his wife, and the trial judge were all in "Outstanding Atlanta;" and the father's wife and the trial judge were "both in Junior League."

"A trial judge has no duty to sua sponte recuse himself or herself in the absence of a violation of OCGA § 15-1-8 or Canon 2, Rule 2.11 (A)." *Shelton v. State*, 350

---

[2] In this order, the trial court also denied a motion for attorney fees filed by the mother. On the same day, the court entered an order that, among other things, denied the mother's motion for reconsideration of its February 2020 order modifying custody.

6

Ga. App. 774, 782 (3) (830 SE2d 335) (2019). OCGA § 15-1-8 (a) (1) and (2) provide that a judge shall not preside over any matter in which he or she is pecuniarily interested nor any matter "when such judge is related by consanguinity or affinity within the third degree as computed according to the civil law to any party interested in the result of the case or matter." Georgia Code of Judicial Conduct Rule 2.11 (A) (a) and (c) provide in relevant part that

> [j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, or in which . . . [t]he judge is within the third degree of relationship to. . . a party to the proceeding, . . . [or] . . . a person known by the judge to have a more than de minimis interest that could be substantially affected by the outcome of the proceeding[.]

(Emphasis omitted.)

The mother points to no evidence that the trial judge was within the third degree of relationship to any party in this case or that the judge had more than a de minimis interest in the case. And to the extent the mother argues that the judge's impartiality might reasonably be questioned because of her alleged membership in the same organizations as the father and his wife (or because the father's brother was a staff attorney for another judge), the mother has not pointed to evidence of significant

7

contact or improper communications between the judge and the father, his brother, or his wife.[3] See *Marlow v. State*, 339 Ga. App. 790, 801 (4) (792 SE2d 712) (2016) (no evidence trial judge had actual contact or involvement with party in underlying dispute). Her allegations therefore are "not enough reasonably to call into question the trial judge's impartiality in this case." Id. (citation and punctuation omitted). This claim of error is without merit.

2. The mother asserts that the trial court erred in declining to relinquish jurisdiction of the custody action to the state of Virginia under the UCCJEA. She asserts that Georgia is an inconvenient forum because neither she nor the child has lived in Georgia since August 2014, and that the trial court abused its discretion by representing to the Virginia court that a trial was forthcoming in Georgia when in fact no trial had been set.

The trial court ruled that it had exclusive and continuing jurisdiction over the custody matter and declined to relinquish jurisdiction to Virginia. The Virginia court issued an order dismissing the action filed there "after discussion [with the Georgia

---

[3] In her argument, the mother cites only to evidence that the father's brother was staff attorney to a state court judge in the same county, and evidence that the father's wife was a member of Junior League and Outstanding Atlanta. The mother cites to no evidence of the trial judge's membership in these organizations.

8

court] of the procedural history of the matters in [the Virginia] court, the factual information as to where the child has resided since 9 months of age, and available trial dates and times ([the Georgia trial judge] has the matter docketed for a trial within the next month)." The Virginia court concluded that "Georgia continues to have exclusive continuing jurisdiction of this matter and will continue to exercise jurisdiction over this matter."

> The UCCJEA provides that, with certain exceptions . . ., once a court of this state has made an initial custody determination, it "has exclusive, continuing jurisdiction" over the matter. OCGA § 19-9-62 (a). Nevertheless, a court with jurisdiction under the UCCJEA may decline to exercise its jurisdiction if it determines that it is an inconvenient forum for further custody considerations. OCGA § 19-9-67 (a).

*Alden v. Yarborough*, 360 Ga. App. 850, 852 (1) (862 SE2d 148) (2021). Because a Georgia court made the initial custody determination in this case in September 2015, it had exclusive, continuing jurisdiction over the matter. OCGA § 19-9-62 (a). It is only where neither the child nor the parents reside in Georgia (or have no significant connections in Georgia and substantial evidence is no longer available in this state) that this exclusive, continuing jurisdiction is lost. OCGA § 19-9-62 (a); see, e.g., *Hall v. Wellborn*, 295 Ga. App. 884, 885 (673 SE2d 341) (2009). As the father resides in

9

this state, the Georgia court did not lose its exclusive, continuing jurisdiction, and the court was not otherwise required to decline its jurisdiction. See OCGA § 19-9-62. Further, although the mother asserts that the trial court misled the Virginia court by representing that a trial was forthcoming, this was not the only reason the Virginia court ceded jurisdiction to Georgia. The Virginia court, just like the Georgia court, concluded that Georgia had exclusive, continuing jurisdiction over the custody matter.

3. The mother argues that the trial court erred in refusing to allow into the record an affidavit she filed the day before an October 4, 2018 temporary hearing. She asserts the affidavit was timely filed pursuant to Uniform Superior Court Rule 24.5 (A) (affidavits for temporary hearing in domestic relations action "shall be served on opposing counsel at least 24 hours prior to hearing"). However, the mother does not point to where in the record the court's ruling can be found and does not explain if the court ruled in an order or during the hearing. See Court of Appeals Rule 25 (c) (2) (in the absence of specific record references supporting an enumerated error, this Court will not search the record and may not consider the enumeration). And, the

affidavit (along with the certificate of service) appear in the record on appeal.[4] This claim of error is without merit.

4. The mother asserts that the trial court erred in declining to rule on her September 4, 2018 motion to compel the father to comply with her discovery requests. But it was the duty of the mother's then-counsel to invoke a final ruling on the motion, and counsel's failure to do so precludes our review on appeal. See *Staggs v. Wang*, 185 Ga. App. 310, 312 (3) (363 SE2d 808) (1987); see also, e.g., *Hilliard v. J. C. Bradford & Co.*, 229 Ga. App. 336, 339 (1) (b) (494 SE2d 38) (1997). Further, several months later, the mother asserted in a joint trial summary that she had no pending motions. She therefore abandoned her motion to compel and induced any error in the trial court failing to rule upon the motion. See, e.g., *Phoenix on Peachtree Condo. Assn. v. Phoenix on Peachtree, LLC*, 294 Ga. App. 447, 450 (2) (669 SE2d 229) (2008) (party cannot complain on appeal that the trial court erred in failing to rule on motion to compel when it asserted at a hearing that no discovery was needed).

5. The mother asserts that the trial court erred in failing to enforce its order requiring a pre-trial conference and late-stage case evaluation, and erred in declining

---

[4] We note that the trial court clerk's office has informed this Court that the October 2018 hearing was taken down, but because no party paid for the transcript to be produced, it has not been filed with the clerk and transmitted to this Court.

to refer criminal activity by the father to the District Attorney.[5] But she has presented no argument or citation to authority on these claims of error, which are therefore deemed abandoned. See Court of Appeals Rule 25 (c) (2); see, e.g., *Drake v. Drake*, 279 Ga. App. 576, 578 (2) (632 SE2d 165) (2006). The mother also enumerates as error the trial court's denial of her motion for reconsideration, but again she has not supported this claim with citation to authority or argument. This argument is therefore also deemed abandoned. *Drake*, supra.

6. The mother argues that the trial court erred in denying her motion for a continuance. She filed the motion five days before the January 7, 2020 start of trial on grounds that the guardian ad litem had not yet produced her report, hindering her ability to prepare for trial, and that the parties had not yet participated in the late case evaluation that had to be canceled because of a conflict of interest involving the evaluator. The trial court heard argument on the motion for a continuance at the start of trial. The mother's counsel informed the trial court that he had just received the guardian ad litem's report the day before, and that the guardian ad litem had not yet spoken to any of the mother's witnesses. Counsel requested a continuance to get the

---

[5] The mother appears to refer to the father's testimony that he monitored and recorded calls with the child.

12

"case resolved without further litigation" – specifically, to attend alternative dispute resolution, to give the guardian ad litem an opportunity to speak with witnesses, to have witnesses from New Jersey and Virginia provide testimony, to do the late case evaluation, and to get additional financial information from the father.

The guardian ad litem explained to the court that she had requested information from the mother and that there was a delay in receiving that information as well as payment from the mother. She explained further that she asked the mother to reduce her list of 46 witnesses or "give [her] a synopsis of what it is they're going to testify to," but the mother failed to do so. The trial court denied the mother's request for a continuance, finding that the parties had ample time to reschedule the late case evaluation and that there had been sufficient opportunity for the issues raised to have been addressed prior to the hearing. The court explained that it would allow the mother to call witnesses and submit witness affidavits, but it was not in the best interests of the court, the parties, or the child to continue the case.

> The denial of a motion for a continuance is addressed to the sound discretion of the trial court, and this Court will not interfere unless it is clearly shown that the court abused its discretion. The trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the

13

ends of justice require. Broad discretion must be granted trial courts on matters of continuances.

*Cockerham v. Cockerham*, 359 Ga. App. 891, 899 (4) (860 SE2d 163) (2021) (citation and punctuation omitted). The mother filed her motion for a continuance only days before the 2020 trial in this case, but she was aware in 2019 that the late case evaluation needed to be rescheduled. And the guardian ad litem testified that the mother delayed sending her information and payment as requested. Further, the mother gave no explanation for why she had been unable to get the father's financial information she sought prior to the hearing. Under these circumstances, we find no abuse of the trial court's discretion in denying the mother's motion for a continuance. See, e.g., *Triple Net Properties v. Burress Dev. & Constr.*, 293 Ga. App. 323, 326 (1) (667 SE2d 127) (2008) (no abuse of discretion in denying motion for continuance where motion filed two days before hearing and movant did not show that it attempted to obtain what it contended was necessary to complete discovery).

7. The mother argues that the trial court erred by imposing child support obligations absent clear and verified financial information from the father and erred in calculating a child support amount that substantially deviates from the guidelines. However, she fails to point to what information from the father was not clear and

14

verified. The mother also fails to show how any deviations from the guidelines in OCGA § 19-6-15 harmed her. The child support worksheet attached to the trial court's modification order shows that the court actually deviated downward and reduced the mother's presumptive child support obligation by $400 to "allow her to travel to see the minor child." See OCGA §§ 19-6-15 (b) (8) (F) (deviations subtracted from or added to presumptive amount of child support shall be applied if supported by the required findings of fact and application of the best interest of the child standard; deviation for travel expenses), OCGA § 19-6-15 (i) (1) (presumptive amount of child support is rebuttable, and the court may deviate from the presumptive amount), and OCGA § 19-6-15 (i) (2) (F) (deviation for travel expenses related to court-ordered visitation). This argument is therefore without merit.

8. The mother argues that the trial court erred in issuing a parenting plan that denied her time to see the child for six months. She appears to refer to a gap between the trial court's February 27, 2020 order modifying custody and incorporating a modified parenting plan, and the September 1, 2020 beginning of her parenting time under the parenting plan in the event the parties did not agree upon parenting time. However, because these dates have passed, the mother's argument is now moot. See, e.g., *U-Haul Co. of Arizona v. Rutland*, 348 Ga. App. 738, 752 (2) (b) (824 SE2d 644)

15

(2019) ("A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights.") (citation, punctuation, and emphasis omitted).

9. The mother asserts that the trial court erred in finding her in contempt. But she provides no record citation to the court finding her in contempt. Further, while the father in his petition to modify custody requested that the mother be held in contempt of the September 2015 custody order, the trial court made no ruling on the father's request. This claim of error is without merit.

10. The mother argues that the trial court erred in awarding attorney fees to the father. She appears to claim that the trial court applied the wrong standard for determining whether to award fees pursuant to OCGA § 19-9-3 (g). But the trial court's order shows that it properly considered whether the father was entitled to reasonable attorney fees and expenses of litigation as provided for in that Code section. To the extent the mother challenges the evidence supporting the award, in the absence of a transcript of the hearing on attorney fees, we must presume the evidence

supported the court's findings.[6] See *Ettrick v. SunTrust Mtg.*, 349 Ga. App. 703, 706 (2) (a) (824 SE2d 727) (2019).

11. The mother asserts that the trial court "erred by declining to apply the full opinions of the judges who heard the protective order matters in Virginia to Georgia." She refers to an excerpt the father admitted at trial from a hearing in a Virginia court on the mother's request for a protective order. The Virginia court declined to issue the order but found that the father acted inappropriately. The mother appears to argue that the trial court should have followed or adopted the Virginia court's finding. However, as the trier of fact for purposes of the modification action, it was for the trial court to decide what weight to give the evidence. See *Ganny v. Ganny*, 238 Ga. App. 123, 125 (3) (518 SE2d 148) (1999).

12. The mother enumerates several errors related to the trial court's modification of custody, asserting that there was a lack of probative evidence and witness credibility to support the trial court findings. She also argues that the court

---

[6] As explained in footnote 4, infra, with regard to a different transcript, the trial court clerk's office has informed this Court that the August 2020 hearing on attorney fees was taken down, but because no party paid for the transcript to be produced, it has not been filed with the clerk and transmitted to this Court.

17

erred in finding a material change of circumstances and erred in adopting the recommendation of the guardian ad litem.

"Once an award of child custody has been made, when the non-custodial parent seeks to change that arrangement, the trial court must first determine whether there has been a material change in circumstances affecting the child's welfare." *Burnham v. Burnham*, 350 Ga. App. 348, 351 (2) (829 SE2d 425) (2019). And on review of an order modifying a child custody arrangement, "this Court views the evidence in the record in the light most favorable to the trial court's order and will affirm the trial court's decision if there is any evidence to support it." *Lowry v. Winenger*, 340 Ga. App. 382, 382 (797 SE2d 230) (2017) (citation and punctuation omitted). We are "mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000) (citation and punctuation omitted).

The father testified the mother often failed produce the child during the one-hour window for daily calls as required by the September 2015 order. He explained further that beginning in 2016, at one time for three or four consecutive months, the mother told the father that the child had an ear infection that prohibited the child from

18

traveling by plane to Georgia for the father's parenting time. In describing one of these instances, the father explained that in March 2016, when he was to have parenting time with the child, the mother informed him that the child had an ear infection and could not travel. But when the father contacted the child's doctor, he was informed that there was no travel restriction for the child. The mother also enrolled the child into a new school and had the child attend therapy sessions with a psychologist without consulting the father. The father testified that there was a constant "grooming of negativity" with respect to his interaction with the child. For example, the father explained that if the child looked away during video calls, the mother would say to the child, "I know you don't really want to be on the phone with [the father]," and she would say things to the child over the phone when he was visiting the father to make the child want to go back to Virginia.

The guardian ad litem recommended that the trial court grant the father's petition to modify custody. She testified that the mother's coaching of the child has affected the child's relationship with his father. She explained that when the mother talks to the child about "how things happen at dad's house[,] [those things] are perceived or discussed as negative." The guardian ad litem explained further that the father was more flexible and proactive in trying to arrange his visitation and parenting

19

time with the child, but that with regard to "coparenting dynamic[s]," the mother was often "delayed in responding," would not respond, or responded by telling the father, "that just doesn't work for us." She stated that in her opinion, the mother believes that the father's relationship with the child is less important than the child's relationship with other relatives, and that the mother often made excuses for the child missing calls with the father.

Although the mother argues that there was a "lack of probative evidence" to support the trial court's findings and challenges the credibility of the witnesses, we do not weigh the evidence or determine witness credibility. "If the record contains *any* reasonable evidence to support the trial court's decision on a petition to modify custody, it will be affirmed on appeal." *Weickert v. Weickert*, 268 Ga. App. 624, 627 (602 SE2d 337) (2004) (emphasis supplied). As there was some evidence that the mother alienated the child from his father, was unwilling to co-parent with the father, and disregarded court orders relating to co-parenting, we cannot say that the trial court abused its discretion in granting the father's petition to modify custody on the ground that there was a change in material circumstances. See *Bankston v. Warbington*, 332 Ga. App. 29, 33-34 (1) (771 SE2d 726) (2015) (no abuse of trial court's discretion in modifying custody in favor of the father where some evidence

20

supported court's determination that mother has undermined child's relationship with the father).

Finally, the mother argues that the guardian ad litem "failed to dispose of her court[-]appointed fiduciary duty and her duty to investigate and ascertain the best interest of the child," and that because of this, the trial court erred in adopting her recommendation.

> A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest. Although a trial court may consider the recommendations of a guardian ad litem, such recommendations are not a substitute for the trial court's independent discretion and judgment.

*Ezunu v. Moultrie*, 334 Ga. App. 270, 271-272 (1) (779 SE2d 44) (2015) (citations and punctuation omitted). The mother cites to an email from the trial court's staff attorney dated after the trial but before the court's ruling, stating that the trial court planned to adopt the guardian ad litem's recommendation. But in the order modifying custody entered about a month later, the trial court stated that the guardian ad litem's analysis and recommendations were "founded and appropriate." Although the trial court considered the guardian ad litem's recommendation, and ultimately came to the same conclusion with regard to custody, the mother has pointed to nothing to suggest

that the trial court failed to exercise its own judgment regarding what was in the best interests of the child. See id. at 272 (1).[7]

*Judgment affirmed. Dillard, P. J., and Pinson, J., concur*.

---

[7] The mother appears to argue that the trial court allowed the father to decide when the change of custody would take place. While the court order's stated that *with the father's consent*, the mother shall maintain physical custody of the child until transfer of the child on June 20, 2020, the court ordered that the parenting plan take effect immediately, and under that plan, the father would have primary custody of the child beginning at the end of the child's school year (in 2020). In any event, as these dates have passed, this argument is now moot. See *U-Haul Co. of Arizona*, supra.