## A10A0879. AUTRY v. THE STATE.
### (701 SE2d 596)

PHIPPS, Presiding Judge.

Sidney Dwayne Autry appeals his conviction for committing the offense of stalking. Among his contentions, he challenges the sufficiency of the evidence. Because the evidence was insufficient, we reverse. Autry's remaining challenges are moot.

Pursuant to OCGA § 16-5-90 (a) (1), stalking is committed by a person "when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." Autry was charged with two counts of stalking. Count 1 charged that, on June 5, 2007, he "did unlawfully place Angie Reed, another person under surveillance without the consent of said other person, for the purpose of harassing and intimidating such other person, to wit: followed her in her vehicle to a store and watched her going into and out of said store." Count 2 charged that, on June 26, 2007, Autry "did unlawfully place Angie Reed, another person under surveillance without the consent of said other person, for the purpose of harassing and intimidating such other person, to wit: said victim was leaving Town Center Mall and saw said accused in his car watching her go to her vehicle."

When an appellant challenges the sufficiency of the evidence to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1]

The state called as a witness Reed, who testified that she had encountered Autry on two different dates. On June 5, 2007, at about noon, Reed drove alone to a sporting goods store within a Cobb County shopping center, parked close to the store, and noticed that "there was a car parked directly in front of mine and sitting in the car was a man." While she sat in her car a few moments to "get organized," the man got out of his car and walked by the driver's side of Reed's car heading toward the entrances of the stores. As Reed walked to the sporting goods store, she passed the man again. Reed

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

was in the store for about 25 minutes before returning to her car. The man, she noted, was again sitting in his car. She drove her car to the store's front to load her purchases, then headed out of the parking lot. The man also was "pulling out," and they reached a stop sign in the parking lot at about the same time. The man drove away from the stop sign before she did, but Reed soon noticed that the same man in the same car was somehow driving behind her on the roadway.

Reed proceeded to her next destination, the SchoolBox, a store located less than a half mile from the sporting goods store. She testified, "I parked in my spot — I noticed that he was also pulling into the SchoolBox and parked in the same row, but at the opposite end." Reed walked into the SchoolBox; the man stayed in his car. While in the store, Reed asked a salesperson whether the store had security personnel and was told no. After about five minutes, Reed walked back to her car. As she was driving out of the parking lot, she went behind the man's car and recorded his license plate number because, as she explained at trial, "I felt like he was following me and I thought it was too coincidental that we had gone from location to location and he just sat in his car the whole time."

As Reed traveled along the road again, the man was initially not behind her, but soon, she saw him "pulling up behind me fairly quickly." He proceeded behind her through the next traffic light; at the next intersection, he turned left behind her; and at the next intersection, however, she turned left and the man continued straight.

About an hour had elapsed from the time Reed first encountered the man at the sporting goods parking lot until he continued straight through that intersection. The encounter had spanned about four miles. During the episode, Reed had taken note of the man's features and aspects of his car. Reed testified that she had been afraid that day that he would follow her home or somehow track her based on her license plate.

Three weeks later, at about 11:30 a.m. on Tuesday, June 26, Reed was approached by the same man in the same car. She had exited Town Center Mall and was walking alone across the parking lot to her car. She recounted:

> [The man] had his window down and he had his head out the window and he continued to follow me in his car, with his window down. He was staring openly in a way that I found very disturbing, that he seemed amused. And he continued to follow me as I walked quickly to my car. And as I get into my car, he pulled into the parking spot next to me, next to the passenger side of my car with his window down.

Reed hurriedly drove away. Initially, the man headed in the same direction as Reed. But after a series of quick turns, Reed no longer saw him.

The next day, Reynolds reported to police the man's conduct on both occasions. She described the man's car, a Chrysler 300, and included its license plate number. And she described the man, whom she identified at trial as Autry.

Autry took the stand and admitted that in June 2007, he owned a Chrysler 300. He denied the stalking charges, however, testifying that he had not known where that particular sporting goods store was located until the underlying charges were brought; that he had never been to, although he had driven past, the SchoolBox; and that he had never seen Reed before trial. Autry also presented evidence to show that, during the times in question, someone else was driving his car in the area of the sporting goods store. Thus, in its rebuttal case, the state presented similar transaction evidence for the purpose of showing identity.[2]

The jury returned a guilty verdict on Count 1 and a not guilty verdict on Count 2. On appeal, Autry argues that the evidence was insufficient to establish the element of "harassing and intimidating" conduct in connection with Count 1. Specifically, he argues that there was an insufficient showing of "course of conduct" as contemplated by OCGA § 16-5-90 (a) (1).

Pursuant to that Code provision,

> the term "harassing and intimidating" means a knowing and willful *course of conduct* directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a *pattern* of harassing and intimidating behavior, and which serves no legitimate purpose.[3]

In *Daker v. Williams*, the Supreme Court of Georgia instructed that a " 'course of conduct' refers to a series of successive actions, and, as such, is equivalent to a *'pattern of behavior.'* "[4] Accordingly, in *State v. Burke*,[5] where there was only a single act at issue, one violation of

---

[2] The court appropriately gave limiting instructions immediately before the state presented the similar transaction evidence, then again during the final charge when it stated: "The defendant is on trial for the particular offenses charged in this accusation only; and he is not on trial for the other transaction."

[3] OCGA § 16-5-90 (a) (1) (emphasis supplied).

[4] *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005) (emphasis supplied).

[5] 287 Ga. 377 (695 SE2d 649) (2010).

a protective order, the Court held that the evidence "simply [did] not establish 'a *pattern* of harassing and intimidating behavior.' "[6] Indeed, in *Burke*, the Court reiterated that the " 'harassing and intimidating' conduct must be established by, among other things, 'a *pattern* of harassing and intimidating behavior.' "[7]

Turning to the facts in this case, it is apparent that Autry's behavior underlying Count 1 — "to wit: followed [Reed] in her vehicle to a store and watched her going into and out of said store" — fell short of demonstrating the requisite *pattern*.[8] The state cites in its appellate brief evidence it presented to prove Count 2. But the jury returned a not guilty verdict on that count.[9] And the behavior alleged in Count 2 was not alleged (as part of a pattern) in Count 1 of the accusation.[10]

> Pretermitting whether the State could have established a pattern or course of conduct in reliance upon [the whole of Autry's] behavior, the fact remains that it made no attempt to do so in prosecuting him [in the only count upon which he was convicted]. Thus, the State failed to establish a course of conduct or pattern of behavior required by the Code.[11]

Accordingly, we must reverse Autry's conviction upon Count 1 for stalking.

*Judgment reversed. Miller, C. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 17, 2010 — 

*Lawrence J. Zimmerman, Christopher R. Geel*, for appellant.

---

[6] Id. at 379 (citations omitted; emphasis supplied).

[7] Id. (citation omitted; emphasis in original); see also *Krepps v. State*, 301 Ga. App. 328, 330 (2) (687 SE2d 608) (2009) (noting that a conviction for stalking requires the state to prove, as part of establishing the element of "harassing and intimidating" behavior, a pattern or a course of conduct).

[8] See *State v. Burke*, supra; compare *Bowen v. State*, 304 Ga. App. 819, 820-821 (1) (a) (697 SE2d 898) (2010) (continued unauthorized contacts with victim and repeated violations of restraining orders established a pattern of harassing behavior).

[9] Compare *Daker*, supra (where defendant was found guilty on each of two counts that "referenced two related instances of stalking behavior against [the victim] occurring within the space of a single week," these acts "evinced a pattern of prohibited behavior criminalized by the [Code]").

[10] See generally *Burke v. State*, 297 Ga. App. 38, 42 (676 SE2d 766) (2009) (rejecting state's attempt on appeal to rely on additional acts by appellant not alleged in indictment in order to make requisite showing of a pattern or course of conduct), aff'd, *State v. Burke*, supra.

[11] *Burke v. State*, supra.

*Barry E. Morgan, Solicitor-General, Jaret L. Teague, Jessica K. Moss, Assistant Solicitors-General*, for appellee.