**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 15, 2019**

# In the Court of Appeals of Georgia

A19A0810. STEPHENSON v. THE STATE.

HODGES, Judge.

In March 2015, a jury found Douglas Edward Stephenson guilty of one count of giving a false statement in a government matter, for which he was sentenced to five years, and two counts of misdemeanor stalking, for which he was sentenced to consecutive twelve month sentences for each count. Stephenson filed a motion for new trial, which the court denied. He appeals, arguing the evidence was insufficient on all counts. For the reasons that follow, we affirm Stephenson's conviction for giving a false statement in a government matter, but reverse his convictions for misdemeanor stalking.

Our standard of review in this case is well-established:

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[1] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citation and punctuation omitted.) *Marlow v. State*, 339 Ga. App. 790, 792-793 (1) (792 SE2d 712) (2016) (giving a false statement); see also *Austin v. State*, 335 Ga. App. 521 (782 SE2d 308) (2016) (stalking).

Viewed in the light most favorable to the jury's verdict, the evidence shows that on December 21, 2013, Stephenson spent less than ten minutes shopping in a Buckle store located in an Augusta mall. While in the store, Stephenson attempted to socially engage with three young women, including the two victims in this case, who, at the time of the trial, were 14 years old and 21 years old. One of the victims testified that Stephenson made her nervous because he stood so close to her, but she helped him while he was looking at boots, and he didn't threaten her in any way or make any sexually-suggestive comments. In fact, this victim spent four or five minutes discussing boots with Stephenson. Stephenson left the store a few minutes later, while

---

[1] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

the girls continued shopping. The victims never told Stephenson at the Buckle store that he was making them nervous or that he should back away from them.

After the girls left Buckle, they returned to their parked car outside the Macy's entrance and went to seven other stores and businesses before returning home, never seeing Stephenson or his red Mustang convertible at any of the locations or their parking lots. In addition, the victims never received any Facebook messages or suspicious calls and never saw anyone suspicious at their homes or university following the incident.

On January 6, 2014, over two weeks later, Stephenson drove to a Kohl's store located in Evans, Georgia. A video of the Kohl's parking lot shows that Stephenson drove into the lot after another vehicle dropped off the victims, two of the girls Stephenson had previously encountered in Buckle. Stephenson pulled over to the curb for approximately four minutes, then parked his car and entered Kohl's through a different entrance than the victims. He remained in the store approximately 30 minutes.

After entering the store, Stephenson at some point approached the victims and interjected two comments during their conversation. The girls walked off, but Stephenson followed them and attempted two to four times to engage them in

3

conversation over approximately 20 minutes. According to the victims, Stephenson never touched them, made any sexually derogatory comments or obscene gestures, or threatened any harm. He simply followed them around the store and watched them as they moved around the store: "It was - - it was looking, basically." The girls were nervous and scared, so they reported Stephenson to a store manager and called 911. According to the Kohl's loss prevention supervisor, the girls clearly did not want to be around Stephenson and they "were in a panic mode."

Kohl's trained their video surveillance cameras on Stephenson once alerted to the situation, and a record of the last eight minutes of Stephenson's time in the store was played for the jury. This video shows Stephenson looking around as he waits in a customer service line for over five minutes, and then him leaving the store; it does not show any contact with the victims or depict the victims in the video. Stephenson left the store before police arrived. Upon driving away from the store, Stephenson turned his vehicle to the left, but then circled back to go the opposite direction, passing the front of the store, where he slowed down and steadily looked into the store as he passed.

The victims admitted at trial that they never told Stephenson to go away or leave them alone. In fact, they never spoke with him at Kohl's. In addition, despite

4

wearing short sleeves showing distinctive tattoos on both arms at both Buckle and Kohl's, the victims did not recall seeing Stephenson prior to the Kohl's incident until they returned home.

On January 7, 2014, Stephenson voluntarily went to the Columbia County Sheriff's Office unannounced to discuss the situation. He was instructed to return the following day for an interview, which he did. The interview was recorded and played for the jury. Detectives asked Stephenson if he had recently been to Buckle in the mall, and Stephenson responded that he had. However, when asked, "Had you ever seen these girls before?" Stephenson replied, "Never." The Buckle surveillance video showed this statement was false.

After reviewing all the information, the detectives acquired arrest warrants for providing a false statement in a government investigation and misdemeanor stalking for each victim. A subsequent search of items seized from Stephenson's home following his arrest, including two cell phones, a tablet, an Apple ipad, a sheet of paper with Facebook addresses, a computer, photographs and correspondence, did not reveal any communications or connection between Stephenson and the victims. Social media searches and a call to Stephenson's gym likewise revealed no communications

5

or connection between Stephenson and the victims, including no indication that Stephenson had visited the victims' social media pages.

1. Stephenson first asserts there was insufficient evidence to support his conviction for giving a false statement under OCGA § 16-10-20. We disagree.

OCGA § 16-10-20 mandates that the offense of giving a false statement or writing occurs when

> [a] person . . . knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state[.]

Stephenson was charged with giving a false statement in a government matter on January 8, 2014 by knowingly and willfully making a false statement and representation in a matter within the jurisdiction of the Columbia County Sheriff's Office, a department within the county government, a political subdivision of the State of Georgia, "by stating to [an investigator] that the accused had never made contact with [one of the victims] before January 6, 2014, a statement that is false and

6

said accused knew to be false, contrary to the laws of said State, the good order, peace and dignity thereof."

Stephenson's statement to the detective investigating the Kohl's incident that he had never seen the victims before January 6, 2014 was contradicted by the Buckle surveillance video showing that Stephenson encountered the victims at Buckle on December 21, 2013. Stephenson admits his statement to the detective was false, but claims that this false statement was not "knowingly and willingly made[.]" Stephenson supports his assertion by citing the following facts: (1) he was truthful about having gone to Buckle, (2) the victims did not initially remember Stephenson until some time after the second incident, despite his distinctive tattoos, (3) the victims had no distinguishing features, so there is no valid proof that Stephenson was in a comparatively superior position to remember the victims, (4) during his interaction with the victims in Kohl's, Stephenson never referenced or made mention of the first encounter at Buckle, and (5) he approached the victims openly in Kohl's.

Despite these facts, and Stephenson's assertion that he did not possess the requisite criminal intent to be convicted under OCGA § 16-10-20, "[i]t is the province of the jury to resolve any conflicts in the evidence and to determine the credibility of witnesses, and the fact that such conflicts may be resolved adversely to [Stephenson]

7

does not render the evidence insufficient." (Citation and punctuation omitted.) *Marlow*, supra, 339 Ga. App. at 793 (1) (jury was authorized to reject testimony that the false statements could have been the product of an innocent lapse in memory); see also *Reeves v. State*, 346 Ga. App. 414, 417 (1) (b) (816 SE2d 401) (2018) (jury was authorized, based on the evidence, to find that the defendant made a false statement despite his claim that the State failed to prove wilfulness).

Here, the jury viewed the Buckle video surveillance footage and heard a recording of Stephenson's statement when they assessed whether Stephenson knowingly and willfully made a false statement during the police investigation into his encounter with the victims at Kohl's. Stephenson's argument that his statement was the result of an innocent lapse in memory and not made "knowingly and willfully" was a matter for the trier of fact, which they resolved adversely to him. The evidence was sufficient to authorize a rational trier of fact to find Stephenson guilty beyond a reasonable doubt of giving a false statement in a government matter. See *Knowles v. State*, 342 Ga. App. 344, 347 (1) (b) (i) (801 SE2d 582) (2017) (defendant's "statements to police, as contrasted with the video surveillance footage of the incident, were sufficient to support her convictions for making false

statements"). Accordingly, we affirm Stephenson's conviction for making a false statement.

2. Stephenson next asserts the evidence was insufficient to sustain his convictions for stalking. We are constrained to agree with Stephenson.

Under OCGA § 16-5-90 (a) (1), "[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." The phrase "harassing and intimidating" is defined in the statute as

> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

OCGA § 16-5-90 (a) (1). And, "[a] 'course of conduct' refers to a series of successive actions . . . equivalent to a 'pattern of behavior.'" *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005). Such a pattern may include any prior history between the parties. See *Austin*, supra, 335 Ga. App. at 524 (1) (stalking conviction affirmed where defendant repeatedly returned to victim's home despite admonitions to stop,

9

even after receiving a criminal trespass warning, and repeatedly sent angry text messages to victim). Finally,

> [a] defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be convicted of stalking. Even behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim.

(Citation omitted.) *Placanica v. State*, 303 Ga. App. 302, 304 (693 SE2d 571) (2010) (stalking conviction affirmed where victim screamed at defendant to leave her alone and was visibly scared, shaking and upset when defendant sent her numerous text messages, sought her out on the internet using a false name, posted signs on her street, showed up at victim's gym, and left a package in victim's car at work).

In this case, Stephenson's conduct in the Kohl's store may have been unsettling and of questionable intent, and his actions clearly scared the victims, but the evidence presented at trial failed to establish the requisite elements of a stalking offense. Pretermitting whether the evidence was sufficient to demonstrate that the victims communicated their wishes to Stephenson that he stop talking to and following them, the evidence was insufficient to establish a course of conduct or pattern of behavior, and, therefore, Stephenson's stalking convictions under OCGA § 16-5-90 (a) (1) must be reversed.

10

OCGA § 16-5-90 (a) (1) does not specify how many incidents constitute a "pattern," nor does it specify the time period within which these incidents must occur. However, cases interpreting this statute uniformly hold that a pattern of harassing and intimidating behavior refers to more than a single instance. See *State v. Burke*, 287 Ga. 377, 378-379 (695 SE2d 649) (2010) (based on the plain terms of the stalking statute, a single violation of a protective order does not establish a "pattern" of behavior); *Daker*, supra, 279 Ga. at 785 (two instances of stalking behavior occurring within a single week can amount to a "series of successive actions" required to establish a pattern of prohibited behavior criminalized by the stalking statutes); *Autry v. State*, 306 Ga. App. 125, 126-128 (701 SE2d 596) (2010) (course of conduct or pattern of behavior requires more than one incident of following an individual).

The stalking charges in this case alleged that Stephenson, "on the 6th day of January, 2014, at 4227 Washington Road, did follow and contact another person, [the victim], without her consent for the purpose of harassing and intimidating the said [victim]. . . ." The State admits that the indictment did not reference the December 21, 2013 Buckle store encounter in the stalking charges: "[T]he incident at the Buckle store was not referenced in either count of the indictment, and therefore should not be considered in determining whether there was a sufficient number of acts to

11

constitute a course of conduct." And, following established case law, the fact that Stephenson may have followed the victims on January 6, 2014, a single date, is not sufficient to establish a course of conduct or pattern of behavior. See *Burke*, supra, 287 Ga. at 377-378; *Autry*, supra, 306 Ga. App. at 127-128.

In *Burke*, supra, 287 Ga. at 377-378, the Georgia Supreme Court held that evidence of prior difficulties could be used to demonstrate a defendant's conduct, state of mind, motive, scheme, purpose, or intent to commit the crime with which he is charged, but could not be considered as evidence of a pattern of behavior that would support the "pattern" element of the stalking statute. Thus, the Court affirmed our opinion reversing Burke's aggravated assault conviction because the State only charged Burke with a single violation of a protective order and, therefore, could not establish a pattern of harassing and intimidating behavior. Id. at 379. Likewise, in *Autry*, supra, 306 Ga. App. at 127-128, this Court reversed a stalking conviction, finding that despite Autry's actions in following the victim three weeks earlier, those actions were not alleged as part of the conduct in the stalking count, and the isolated incident in the stalking count could not serve as sufficient evidence of a pattern of harassing and intimidating behavior. Id. at 128 (the State failed to prove a pattern of

harassing and intimidating behavior because "the behavior alleged in Count 2 was not alleged (as part of a pattern) in Count 1 of the accusation").

To circumvent its failure to include the Buckle store incident in the stalking charge, the State presented the encounter at the Buckle store, and Stephenson's false statement that he had not seen the victims prior to the Kohl's encounter when, in fact, he had encountered them at the Buckle store 16 days prior to the Kohl's incident, as "intrinsic evidence" of Stephenson's pattern of intimidating behavior. According to the State, "the Buckle encounter does help to establish the appellant's criminal intent to harass and intimidate the victims at the Kohl's store - especially in light of the fact that the appellant lied about the Buckle encounter." The State argues that under the new evidence code,

> [e]vidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.

(Citations and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). Pretermitting whether the use of intrinsic evidence permits a jury to consider uncharged conduct when determining whether the State has established a course of conduct or pattern of behavior, we find the evidence is still insufficient.

13

The record is devoid of any evidence that Stephenson threatened or scared the victims during their brief encounter at Buckle. At most, one of the victims was "nervous" during the Buckle encounter. In fact, the victims did not even remember Stephenson or the Buckle incident until after they returned home from Kohl's. In addition, the victims admitted they never saw Stephenson or his red Mustang after the Buckle encounter, they never received any Facebook messages or suspicious calls from Stephenson, and they never saw anyone suspicious at their homes or university following the Buckle incident. Moreover, none of the items seized from Stephenson's home following his arrest revealed any communications or connection between Stephenson and the victims, and social media searches likewise revealed no communications or connection between Stephenson and the victims, including no indication that Stephenson had visited the victims' social media pages. There is simply no evidence to support a course of conduct or pattern of harassing and intimidating behavior based on the Buckle encounter.

The State points to a number of facts which it argues supports an inference that Stephenson followed the victims and placed them under surveillance. For example, according to the State, the fact that Stephenson's red Mustang was immediately behind the victims' vehicle when they were dropped off at Kohl's and sat at the curb

14

before parking for four minutes after they were dropped off supports "the reasonable inference that he had followed the girls to the store while simultaneously placing them under surveillance to ascertain their whereabouts and then, their destination." However, the mere fact that Stephenson happened to drive into the Kohl's parking lot, a place where he had the right to be, without more, does not support the reasonable inference that he followed the victims to the store and put them under surveillance. The State also asserts that, by parking in a handicap spot near the front of the store and leaving the Kohl's store before police arrived, Stephenson demonstrated knowledge of wrongdoing and attempted to avoid police. However, the State acknowledges that Stephenson's father is handicapped and eligible for a handicap sticker and further "concedes that this argument is belied by evidence that the appellant took the affirmative step of going to the Columbia County Sheriff's Office to make a statement" after the incident.

Not only do the State's arguments rely on pure speculation, but these incidents occurred on a single day, thus failing to establish a pattern of behavior. See *Autry*, supra, 306 Ga. App. 127-128. As in *Pilcher v. Stribling*, 282 Ga. 166, 168 (647 SE2d 8) (2007) (reversing a permanent restraining order based on the offense of stalking particularly because Pilcher was not following the victims or placing them under

15

surveillance), there is no evidence that Stephenson followed the victims or placed them under surveillance prior to the Kohl's encounter.

Although a jury was entitled to reject Stephenson's version of the events surrounding the charged acts,[2] it is well-established that there must be competent evidence in favor of conviction for the jury's ruling to be upheld. See *Autry*, supra, 306 Ga. App. at 127-128. Here, there simply is none. Even construed in the light most favorable to support the jury's verdict, the evidence introduced at trial was insufficient to establish the necessary elements of a stalking conviction under OCGA § 16-5-90 (a) (1). We therefore reverse Stephenson's convictions for stalking.

*Judgment affirmed in part; reversed in part. Dillard, P. J., and Gobeil, J., concur*.

---

[2] See *Krepps v. State*, 301 Ga. App. 328, 329 (1) (687 SE2d 608) (2009) ("Notwithstanding a defendant's claims of innocent motives, it is for the finder of fact to determine whether the defendant acted with the requisite degree of criminal intent in engaging in the act for which he is prosecuted.").